No. 24-2889

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

## WELCH FOODS, INC.,

*Appellant,*

v.

## GENERAL TEAMSTERS LOCAL 397,

*Appellee.*

---

Appeal from a Final Judgment of the United States District Court for the
Western District of Pennsylvania, Case No. 1:19-CV-00322-SPB-RAL
(September 23, 2024)

---

## BRIEF OF APPELLANT

---

Robert A. Fisher
Massachusetts Bar No. 643697
SEYFARTH SHAW LLP
Two Seaport Lane,
Suite 1200
Boston, Massachusetts 02210
617-946-4800 (Telephone)
617-946-4801 (Facsimile)
rfisher@seyfarth.com

John Ayers-Mann (*admission pending*)
Massachusetts Bar No. 703184
SEYFARTH SHAW LLP
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
(310) 277-7200 (Telephone)
(310) 201-5219 (Facsimile)
jayers-mann@seyfarth.com

COUNSEL FOR APPELLANT

# DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 28(a)(1) of the Federal Rules of Appellate Procedure, Appellant Welch Foods, Inc. states:

Welch Foods, Inc. hereby certifies that no parent companies, subsidiaries and/or affiliates have issued shares or debt securities to the public.

*/s/ Robert A. Fisher*

Robert A. Fisher

Counsel for Welch Foods, Inc.

Dated: January 7, 2025

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................... I

TABLE OF AUTHORITIES ...................................................................IV

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............2

STATEMENT OF RELATED CASES AND PROCEEDINGS.................3

STATEMENT OF THE STANDARD OR SCOPE OF REVIEW.............4

STATEMENT OF THE CASE .................................................................5

I.    The Parties And Their Collective Bargaining Agreement. .............5

II.   Woodward's Termination and the Grievance Process.....................7

III.  The Arbitration. ..............................................................................9

IV.   The District Court Action...............................................................16

      A.   The Union's Motion to Dismiss...........................................16

      B.   The Initial Cross-Motions for Summary Judgment. ...........18

V.    The Arbitrator's Purported "Clarification" of the Award.............19

VI.   The Parties' Renewed Cross-Motions for Summary
      Judgment.........................................................................................20

SUMMARY OF THE ARGUMENT .......................................................25

ARGUMENT ..........................................................................................27

I.    Standard of Review. .......................................................................27

II.   There is A Well-Defined and Dominant Public Policy
      Prohibiting Sexual Harassment. .....................................................28

III.   The Award Conflicts With Public Policy ...................................... 30

    A.   The Purported Clarification Was Nothing of the Sort. ........ 32

    B.   The Arbitrator Refused to Comply With the Remand
        Order. .................................................................................. 35

    C.   The Arbitrator's Statement About Sexual Harassment
        Rests on Her Reading of the Termination Letter ................ 38

    D.   The District Court's Determination Was Not Based On
        the Language of the Award or the "Clarification" ............... 42

CONCLUSION ........................................................................................ 47

CERTIFICATE OF SERVICE .................................................................. 49

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-
STYLE REQUIREMENTS AND WITH LOCAL APPELLATE
RULE 31.1(C) ........................................................................................ 50

CERTIFICATION OF COMPLIANCE WITH LOCAL
APPELLATE RULE 28.3(D) ................................................................... 51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011)................................................................37

*Broth. of Locomotive Engineers v. ICC,*
885 F.2d 446 (8th Cir. 1989)...............................................40

*Brown v. Witco Corp.,*
340 F.3d. 209 (5th Cir. 2003).....................................36, 37

*Colonial Penn Ins. Co. v. Omaha Indem. Co.,*
943 F.2d 327 (3d Cir. 1991) ...............................................31

*Communication Workers of Am. v. Southeastern Electric Co-op.,*
882 F.2d 467 (10th Cir. 1989).............................................45

*Eastern Associated Coal Corp. v. United Mine Workers of Am.,*
531 U.S. 57 (2000)..................................................................28

*Exxon Shipping Co. v. Exxon Seaman's Union,*
73 F.3d 1287 (3d Cir. 1996) ................................................28

*Huston v. Procter & Gamble Paper Prods.,*
568 F.3d 100 (3d Cir. 2009) ................................................29

*ITT v. United Steel, Paper & Forestry, Rubber, Mfg.,*
5:21-cv-00205, 2021 WL 3362060 (E.D. Pa. Aug. 3, 2021)...........45, 46

*Meritor Savings Bank v. Vinson,*
477 U.S. 57 (1986)..................................................28, 29, 39

*Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co.,*
389 F. Supp. 3d 687 (N.D. Cal. 2019).................................36

iv

*Off. Prof. Empl. v. Brownsville Gen. Hosp.*,
    186 F.3d 326 (3d Cir. 1999) ................................................................. 31

*Skretvedt v. E.I. DuPont De Nemours*,
    372 F.3d 193 (3d Cir. 2004) ............................................................... 37

*Stroehmann Bakeries, Inc. v. Local 776, International*
    *Brotherhood of Teamsters*,
    969 F.2d 1436 (3d Cir. 1992) ...................................... *passim*

*United Paperworkers Intern'l, AFL-CIO, v. Misco, Inc.*,
    484 U.S. 29 (1987) .............................................................................. 27

*Verizon Pa. LLC v. Commc'ns Workers of Am.*,
    13 F.4th 300 (3d Cir. 2021) ........................................................ 28, 37

*W.R. Grace & Co. v. Local Union 759*,
    461 U.S. 757 (1983) ..................................................................... 27, 28

**Statutes**

43 Pa. Cons. Stat. § 955(a) ................................................................. 29

9 U.S.C. § 10 ........................................................................................ 47

28 U.S.C. § 1291 ................................................................................... 1

29 U.S.C § 185 *et seq.* .......................................................................... 1

42 U.S.C. § 2000e, *et seq.* ................................................................... 28

Title VII of the Civil Rights Act of 1964 ..................................... 7, 28, 29

LMRA § 301 ......................................................................................... 1

Pennsylvania Human Relations Act § 5(a) ..................................... 29, 39

**Other Authorities**

29 C.F.R. § 1404.14 ............................................................................ 47

29 C.F.R. § 1604.11 ................................................................. 29, 30, 40

29 C.F.R. § 1604.11(a) (1991) .................................................... 16

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................... 42

Local Appellate Rule 28.1 ......................................................... 3

Penn. Human Relations Commission, *Guidelines on Sexual Harassment*, Pa. B. Dec. No. 81-201 (Jan. 30, 1981) ......................... 29

# JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of the United States District Court for the Western District of Pennsylvania in Case No. 1:19-CV-00322-SPB-RAL on September 23, 2024. The District Court had jurisdiction pursuant to Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C § 185 *et seq.*

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because Welch Foods, Inc. appeals from a final decision of the district court. Venue is appropriate because the appeal is from a district court in this circuit.

## STATEMENT OF THE ISSUES PRESENTED
## FOR REVIEW

1.    Whether the District Court erred in failing to vacate an arbitration award on the grounds that it violated the dominant and well-established public policy against sexual harassment in the workplace. Joint Appendix 9-11 (April 16, 2024 Report & Recommendation); Joint Appendix 246-49 (objections to April 16, 2024 Report & Recommendation); Joint Appendix 29 (docket).

2.    Whether the District Court erred in failing to vacate the award when the arbitrator failed to specify her factual findings, despite that the district court initially remanded the matter to the arbitrator to specify her factual findings and the arbitrator failed to do so. Joint Appendix 9 (April 16, 2024 Report & Recommendation); Joint Appendix 247-48 (objections to April 16, 2024 Report & Recommendation); Joint Appendix 29 (docket).

3.    Whether the District Court erred by advancing a theory for upholding the award that the arbitrator never relied upon. Joint Appendix 9 (April 16, 2024 Report & Recommendation); Joint Appendix 248-49 (objections to April 16, 2024 Report & Recommendation); Joint Appendix 29 (docket).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Pursuant to Local Appellate Rule 28.1, Welch Foods, Inc. states that this case has not been before this Court previously and that it is not aware of any other case or proceeding that is in any way related, completed, pending or about to be presented before this Court or any other court or agency, state or federal.

## STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

As to each of the issues presented for review, this Court's review is plenary.

## STATEMENT OF THE CASE

This case arises out of a labor arbitration award in which the arbitrator ordered the reinstatement of a male employee, Pat Woodward ("Woodward").  Woodward was terminated for creating a "hostile work environment" by his use of "abusive, sexually explicit and derogatory" language towards a female co-worker and women in general.  Joint Appendix ("JA") 43 (Award).  Welch Foods, Inc. ("Welch's" or the "Company") brought this action to vacate the award as contrary to the dominant and well-established public policy against sexual harassment in the workplace.

## I.    The Parties And Their Collective Bargaining Agreement.

Welch's produces grape juices, jams and jellies at several locations, including a production facility in North East, Pennsylvania. JA 34, ¶ 2 (Complaint); JA 110 ¶ 2 (Answer).  General Teamsters Local Union 397 (the "Union") is the exclusive bargaining representative of employees at the North East plant.  JA 34, ¶ 3 & 6 (Complaint); JA 110, ¶ 3 & 6 (Answer).

Welch's and the Union were parties to a collective bargaining agreement ("Agreement"), effective from June 7, 2016 to June 6, 2020, covering employees at the plant.  JA 34, ¶ 6 (Complaint); JA 110, ¶ 6

(Answer); JA 65 (collective bargaining agreement). Among other provisions, Article III, Section 3 of the Agreement states that "[t]he Company may discharge an employee for any reason which, in its judgment, is in the interests of the Company except Union activity" and "[t]he discharge of an employee is subject to review in accordance with the provisions of Article XII." JA 70, Art. III, § 3 (collective bargaining agreement).

Article XII is the grievance and arbitration provision of the Agreement, which provides for the resolution of disputes. JA 83-84, Art. XII (collective bargaining agreement). The final step in that process is arbitration pursuant to the rules of the Federal Mediation and Conciliation Service ("FMCS"). *Id.* In cases involving the discharge of an employee, the Agreement provides that "the arbitrator shall have the power in accordance with the circumstances to direct reinstatement or no reinstatement, with or without back pay, in whole or in part." JA 84, Art. XII, § 6 (collective bargaining agreement).

Finally, Article XIII, Section 5, of the Agreement, entitled, "Non-Discrimination," provides that the "[t]he Company and the Union agree that they will not discriminate against any employee . . . on the basis of

. . . sex . . . as those terms are defined and interpreted under the provisions of Title VII of the Civil Rights Act of 1964, as amended . . . and Pennsylvania state law." JA 84-85, Art. XIII, § 5 (collective bargaining agreement).

## II.   Woodward's Termination and the Grievance Process.

On January 21, 2019, Welch's terminated the employment of Pat Woodward.  JA 43 (Award).  Welch's set out its reasons for the termination in a letter to Woodward:

> This letter is to inform you that [you] are terminated at Welch's as of January 11, 2019 for creating a hostile work environment. Your threatening and intimidating behavior and language used in the breakroom on January 11, 2019 violates Welch's Rules of Conduct. Specific violations include:
>
> - Disrespectful language that was abusive, sexually explicit and derogatory towards another co-worker and women in general.
> - Behavior which violates standards of common sense, common dignity or is in reckless disregard of your fellow employees or your Company.

JA 43 (Award).

Woodward was a member of the Union and had been its Chief Steward at the plant for two years.  JA 43, 52 (Award).  On January 22, 2019, the Union filed a grievance seeking Woodward's reinstatement. JA 43-44 (Award).

The grievance proceeded through the Agreement's grievance steps, during which the Company repeatedly denied the grievance. JA 43-45 (Award). At the Step III meeting, Woodward denied saying anything sexually inappropriate, claimed he was wrongfully accused and alleged that he had been "set up" by his accuser, female co-worker Terri Lawson ("Lawson"). JA 44 (Award).

Welch's set out in writing the parties' discussion about the grievance at the Step IV meeting. JA 45 (Award). The Company explained that Woodward had been terminated for using abusive, sexually explicit and derogatory language towards Lawson and about women in general in the plant. *Id.* Among other things, the Company stated that Woodward had referred to Lawson and female co-workers as "self-serving vagina bitches" and "fucking worthless." Woodward had pointed to his groin and made a comment that "if you don't have one of these, you are no good." *Id.*

At the Step IV meeting, Woodward denied making these statements and again claimed to have been set up. He admitted to using profanity and using the word "vagina," but claimed that he only

asked Lawson, "'why are you telling people I won't help them if they have a vagina.'" *Id.* The Company denied the grievance. *Id.*

### III.    The Arbitration.

The Union took the grievance to arbitration through the FMCS. JA 45-46 (Award). Arbitrator Michelle Miller-Kotula (the "Arbitrator") was selected to hear the case. *Id.* The Arbitrator is not an attorney. JA 195 (resume).

The Arbitrator held a hearing on the grievance on April 26, 2019 in Erie, Pennsylvania. JA 46 (Award). On October 5, 2019, the Arbitrator issued her Award. In Section I of the Award, the Arbitrator set out the text of the termination letter and described what had happened during the grievance steps prior to the grievance reaching arbitration. JA 42-46 (Award). She then explained that the issue to be decided was "[w]hether or not there was just cause to discharge Pat Woodward, the grievant?" JA 46 (Award).

Under the heading "BACKGROUND," the Arbitrator described the testimony and evidence presented at the hearing.[1]  JA 46 (Award). Plant Manager David Piontkowski ("Piontkowski") testified that there

---

[1] There was no transcript from the hearing.

were approximately 290 employees in the production and maintenance unit at the plant, and within that, about 70 employees in the processing department. JA 46 (Award). A Union Steward is assigned to each department. *Id*. Employees are trained annually on maintaining a harassment free workplace. *Id*.

Piontkowski explained that he learned of an "extremely loud and out of the ordinary" argument in the breakroom in the processing area involving Lawson and Woodward. JA 46-47 (Award). Welch's then investigated the matter. During the investigation, the Company learned that Lawson had approached Woodward about a Union-related matter. JA 47 (Award). Woodward admitted to Welch's that he had "crossed the line," but "expressed little remorse." *Id*. Although Welch's initially terminated both Woodward and Lawson, the Union told the Company that Lawson had done nothing wrong because she approached Woodward with a question. *Id*. Based on this representation, Piontkowski testified that Welch's agreed to reinstate her. *Id*.

Four different witnesses testified about the incident. Union-represented employee Robert Ferringer ("Ferringer") was subpoenaed to testify at the hearing. Ferringer testified that he was cleaning the

breakroom on January 11, 2019. JA 48 (Award). Lawson was there eating when Woodward entered the room. *Id*. According to Ferringer, Lawson asked Woodward a question and in response, Woodward "flipped out, got angry and started to shout." *Id*. Woodward used obscenities, called Lawson a "'fucking no good vagina bitch", and used the [phrase] "'fucking bitch' quite a few times." *Id*. Ferringer testified that Lawson did not shout and told Woodward to calm down. *Id*. Ferringer heard reference to the word penis, that "'if you don't have one of these you are nothing and not going anywhere in this Company." JA 49 (Award). He testified that he was concerned about Lawson because Woodward was quite loud and worked up. *Id*.

Lawson also testified at the arbitration hearing. *Id*. She explained that she had been running for Union Steward for the processing department. The day before the incident, Woodward and the current Steward, Ryan Cerrie ("Cerrie"), ran a scenario by her relating to the tank house. JA 49-50 (Award). She did not know why they were asking her. Later, another employee accused her of throwing him under the bus, and she said that Woodward and Cerrie had set her up. JA 50 (Award).

Lawson testified that on the day of the incident, she was in the breakroom. JA 49 (Award). When Woodward came in, she asked him a question about their interaction the day before. JA 49-50 (Award). In response, Woodward used vile and obscene language and screamed at her. JA 50 (Award). According to Lawson, he said "worthless self-serving vagina bitches and stated every female is a self-serving vagina bitch." *Id*. Woodward said she was "talking stupid," "worthless" and that other employees were a "retard if someone voted for her." *Id*. Lawson testified that Woodward, apparently referencing the Union Steward election, said she was "more stupid than [he] thought," if she thought she could win. *Id*. Woodward called another female employee "lazy, worthless and . . . a self-serving vagina." *Id*.

Woodward also testified about the incident. He claimed that Lawson began yelling at him when he entered the breakroom. *Id*. Woodward then testified that he "felt like he had to defend himself." He asked Lawson why she is telling people that he "is a corporate cocksucker and that he will only help people with penises and not vaginas." JA 53 (Award). He admitted to using the word "fuck," which he claimed was not uncommon in the plant, denied that he had pointed

12

to his crotch, and denied that he said "self-serving vagina" or "vagina bitch." *Id.* He called Lawson a "sideliner," meaning someone who complains but does nothing about it. JA 53-54 (Award). He claimed that he is a big guy and his voice carries. JA 53 (Award).

On cross-examination, Woodward admitted that "he may have crossed the line by saying vagina, cocksucker and penis." JA 54 (Award). He also acknowledged that he had been counseled before for his conduct but contended that the online training on sexually explicit language and appropriate behavior was inadequate. *Id.*

Finally, Union Steward Cerrie testified. JA 51 (Award). He confirmed that the day before the incident, he and Woodward asked Lawson how she would handle a situation that had occurred if she were the Union Steward. *Id.* According to Cerrie, Lawson responded that she would "hang" both of the individuals involved. *Id.* Cerrie testified that the following day, he walked into the breakroom with Woodward, when Lawson asked him why he had told another employee about what she had said the day before. *Id.* She then said he (meaning Cerrie) was fucked. *Id.* Cerrie testified that Woodward said he "was tired of

[Lawson] running her mouth" and telling people he was "a corporate cock sucker." JA 52 (Award). Cerrie then left. *Id*.

After setting out the parties' position and relevant language of the Agreement, the Arbitrator set out her opinion and the "material facts" based on her review of the relevant record. She found that on January 11, 2019, "[t]he grievant and . . . Ms. Lawson began to argue" in the breakroom." JA 59 (Award). The Arbitrator made no findings as to what each of them specifically said or did during the incident. Instead, the Arbitrator explained that there was an investigation, and that while both Woodward and Lawson were initially terminated, Lawson's termination was reduced to a suspension. *Id*.

After again setting out the parties' respective arguments, the Arbitrator wrote, "I have carefully considered the arguments of the parties in conjunction with the facts and relevant CBA language." JA 60 (Award). She again recited that Woodward and Lawson "were involved in a verbal confrontation." *Id*. The Arbitrator explained that Lawson "instigated the argument" by confronting him about their discussion the day before. The argument then became "escalated and heated." JA 61-62 (Award).

The Arbitrator then explained, "[i]n my opinion, the Company did have just cause to discipline the grievant. . . . He was not the instigator, but he said inappropriate comments and used foul language during the incident."   JA 62 (Award).   The Arbitrator concluded that "[t]he Company was correct to discipline the grievant for his involvement in the argument." *Id*.

As to the degree of discipline, the Arbitrator acknowledged that the Company had warned Woodward in April 2018 after he engaged in "an extended rant" that such conduct was not tolerated.  *Id*.  As to the incident with Lawson, she found that Woodward's "language was not appropriate when he raised his voice and used inappropriate words during the argument."   JA 63 (Award).   The Arbitrator nonetheless found termination to be "too harsh" because Lawson started the argument and because Woodward's "actions were the same as Ms. Lawson's actions." *Id*.  Although the Arbitrator never found what each of them said or did, she wrote that in her opinion, both raised their voices and "used inappropriate language." *Id*.  The Arbitrator reduced the termination to a ten-day suspension and ordered Woodward reinstated and "made whole for losses incurred."   JA 64 (Award).

## IV.   The District Court Action.

On October 31, 2019, Welch's timely filed a complaint in the United States District Court for the Western District of Pennsylvania to vacate the Award. JA 33 (Complaint).  Welch's alleged that the Award violated the dominant and well-established public policy against sexual harassment. *Id.*

### A.   The Union's Motion to Dismiss.

On December 5, 2019, the Union moved to dismiss the Complaint for failure to state a claim.  JA 24 (docket).  On August 6, 2020, the Magistrate Judge issued a Report and Recommendation, recommending denial of the motion.   JA 90 (Aug. 6, 2020 Report and Recommendation).  The Magistrate Judge explained, "the Arbitrator's findings in this matter did not address whether the Grievant engaged in the specific conduct of which he was accused."   JA 97 (Aug. 6, 2020 Report and Recommendation).  He then wrote that if the Arbitrator has found that Woodward had engaged in such conduct, it "easily would have been enough to demonstrate that he had engaged in sexual harassment under federal law," citing 29 C.F.R. § 1604.11(a) (1991).  *Id.* The Magistrate Judge further wrote, the Arbitrator "did not address the specific conduct of which [Woodward] was accused," and that "[a]though

the Arbitrator found the Grievant engaged in 'foul' and 'inappropriate' language and conduct . . . , she did not specify the substance of either." JA 98 (Aug. 6, 2020 Report and Recommendation). He rejected the notion that Lawson's instigation and participation in the incident somehow authorized Woodward's conduct. *Id*. The Magistrate Judge concluded that "the Court cannot identify or divine any specific findings by the arbitrator on the most critical issues of the case" and recommended denial of the motion. JA 99-100 (Aug. 6, 2020 Report and Recommendation).

The Union objected to the Report and Recommendation on its motion to dismiss. JA 26 (docket). On September 30, 2020, the District Court rejected the objections and adopted the Report and Recommendation. JA 107 (Sept. 30, 2020 Memorandum Order). The District Court agreed with the Magistrate Judge that the Arbitrator overlooked the sexually explicit nature of the accusations against Woodward and "fail[ed] to address the specific conduct underlying [Welch's] decision to terminate" Woodward. JA 106 (Sept. 30, 2020 Memorandum Order). The District Court denied the Union's motion to

dismiss for failure to state a claim.    JA 107 (Sept. 30, 2020 Memorandum Order).

## B.    The Initial Cross-Motions for Summary Judgment.

The parties then filed cross-motions for summary judgment. JA 27-28 (docket).  On August 12, 2021, the District Court remanded the matter to the Arbitrator.  JA 123 (Aug. 12, 2021 Memorandum Order).  The District Court explained that the Arbitrator did not specifically describe the substance of the "foul and inappropriate words" used by Woodward and therefore "has not made clear whether the grievant's conduct amounted to sexual harassment."  JA 125-126 (Aug. 12, 2021 Memorandum Order).  The District Court thus ordered the Arbitrator to clarify her Award to include "specification of her factual findings regarding the sexual harassment allegations" and, if she found merit to those findings, her consideration of the pertinent public policy against sexual harassment in the workplace.  JA 126 (Aug. 12, 2021 Memorandum Order).

For nearly two years, the Arbitrator ignored the District Court's remand.  On May 8, 2023, the District Court held a telephonic status conference and ordered the parties to reopen the case upon receipt of

the Arbitrator's clarification or provide a written status report by August 8, 2023.  JA 29 (docket); JA 128 (text minute entry).

## V.    The Arbitrator's Purported "Clarification" of the Award.

Four days before the District Court's deadline, on August 4, 2023, the Arbitrator provided a letter purporting to answer the District Court's Order.  JA 131 (clarification letter).  Although that order required her to specify her factual findings regarding sexual harassment, the Arbitrator did not do so.  She refused to specify what foul and inappropriate words were used by Woodward.  *See generally id*. Instead, the Arbitrator restated the substance of the termination letter. JA 132 (clarification letter).  Rather than decide whether Woodward was guilty, she wrote:

> This arbitrator did not find sexual harassment to be one of the charges the Company outlined against the grievant.  It was not included in the discharge letter provided to the grievant.  The arbitrator based her findings on the reasons the Company terminated the grievant, which did not include a charge of sexual harassment.

*Id*.  The Arbitrator then reiterated what she had said in the Award: that both Woodward and Lawson "engaged in inappropriate language in the workplace" and that Lawson "was the instigator."  *Id*.  The Arbitrator explained that termination was too harsh because both

19

Woodward and Lawson raised their voices and used inappropriate language.  JA 133 (clarification letter).  She then wrote in the third person: "The arbitrator did not find the grievant engaged in sexual harassment and the Company did not contend in his termination letter that he was involved in sexual harassment."  *Id*.

As to the second question posed by the District Court, the arbitrator deemed it inapplicable in light of her prior response.  *Id*.

## VI.  The Parties' Renewed Cross-Motions for Summary Judgment.

Thereafter, the parties filed renewed cross-motions for summary judgment.  The Chief Magistrate Judge held a hearing on the cross-motions on March 14, 2024.  JA 217 (transcript).  At the outset of the hearing, the Chief Magistrate Judge asked Welch's whether he "can reasonably read the arbitrator's award and her supplement to her award as expressing a finding that the conduct here was not sufficiently severe or pervasive enough to constitute sexual harassment."  JA 219 (transcript).  Welch's denied that it could be.  *Id*.  The Chief Magistrate Judge later said, "I have to acknowledge that the arbitrator has not made my job easy here trying to define exactly what she was thinking." JA 223 (transcript).

The Chief Magistrate Judge then engaged in a colloquy with counsel for the Union regarding the Arbitrator's statement that she did not find sexual harassment:

> THE COURT: The problem, and I'll go back through it, but when I read it myself, . . . I walked away with the conclusion that the conduct described by the other witnesses and attributed to Mr. Woodward actually happened, and then the question is, . . . how can I not describe that or find that to be sexual harassment?

JA 239 (transcript). The Union responded that it had discredited those witnesses who testified against Woodward. *Id*. When the Chief Magistrate Judge responded that he was referring to the Arbitrator's findings, counsel for the Union responded:

> MR. ORSATTI: The arbitrator didn't make those findings. The arbitrator just recounted what they said, what their testimony was, and I told the arbitrator at the arbitration hearing, if that were true, . . . we wouldn't be here, because we don't believe in sexual harassment. We don't believe an employee who committed sexual harassment should be employed. . . . Local 397 does not believe employees who are guilty of sexual harassment should continue in their employment. I told the arbitrator that. She knew that.

> THE COURT: Let me just ask you then, if the arbitrator had found that the statements and gestures and other conduct attributed to Mr. Woodward, if the arbitrator had expressly found that he made those statements and engaged in that conduct, do you agree that would rise to the level of sexual harassment under federal law?

MR. ORSATTI: I do.  If he had said those things to the other employee, if she found that he did that, we wouldn't be here. . . . But the witnesses who testified against him were not credible witnesses . . .

THE COURT: I don't care how the arbitrator would have gone, whether she would have believed every word of those witnesses or believed every word of Mr. Woodward.  I wish she would have made, and what I am used to seeing is a credibility finding. You are right.  She did recount all of the testimony, but I read it over and over again, and I couldn't tell who she believed.

JA 240-241 (transcript).

Despite that the Arbitrator did not answer the question posed by the District Court in the remand order, on April 16, 2024, the Chief Magistrate Judge issued a Report & Recommendation in which he recommended denying Welch's motion for summary judgment and granting the Union's cross-motion. JA 3 (April 16, 2024 Report and Recommendation). The Chief Magistrate Judge recognized that the Arbitrator's initial Award "did not include findings . . . [regarding] whether [the] Grievant engaged in the specific conduct described by [Lawson]," but asserted that "[t]he clarification sufficiently resolves this ambiguity." JA 9 (April 16, 2024 Report and Recommendation). Acknowledging that "the findings of the Arbitrator's clarification remain less than the picture of clarity," the Chief Magistrate Judge

explained that the Arbitrator found in the clarification that both Woodward and the female co-worker "engaged in inappropriate language in the workplace" and Lawson was the instigator of the altercation – the same thing that the Arbitrator had said in her original Award. *Id.*

The Chief Magistrate Judge agreed with Welch's that the absence of the words "sexual harassment" in the termination letter did "not preclude a finding of such where the conduct alleged and proven fits the definition." JA 10 (April 16, 2024 Report and Recommendation). However, he concluded that "read in their entirety and with due deference to the Arbitrator, the award and clarification reflect her finding that [Woodward's] conduct did not rise to the level of sexual harassment." *Id.* He then explained that "[s]exual harassment is present where the conduct is 'sufficiently severe or pervasive'" and cited to cases to that effect. *Id.* The Chief Magistrate Judge thus concluded that the Arbitrator's "ultimate assessment" was that Woodward's "conduct, while offensive and inappropriate, did not constitute sexual harassment warranting dismissal" and that, as clarified, the Award did "not violate the public policy against sexual harassment." *Id.*

Welch's timely objected to the Report & Recommendation. JA 246-249 (objections to April 16, 2024 Report & Recommendation). On September 23, 2024, the District Court adopted the Report & Recommendation. JA 13 (Sept. 23, 2024 Memorandum Order). The District Court agreed that "in her initial award, the Arbitrator failed to adequately state her conclusions as to whether [Woodward] engaged in the described conduct." JA 16 (Sept. 23, 2024 Memorandum Order). Like the Chief Magistrate Judge, the Court cited to the Arbitrator's purported clarification that both Woodward and Lawson engaged in inappropriate language and concluded that the Chief Magistrate Judge did not err in holding that this resolved the ambiguity in the original Award. JA 16-17 (Sept. 23, 2024 Memorandum Order). While asserting that the "severe and pervasive" standard was not part of the decision of the Chief Magistrate Judge, the District Court nonetheless agreed with him that the Award and the clarification reflect the Arbitrator's view that Woodward's conduct did not rise to the level of sexual harassment. JA 17 (Sept. 23, 2024 Memorandum Order).

Welch appealed the judgment. JA 1 (notice of appeal). On October 25, 2024, the District Court granted Welch's motion for a stay

pending appeal of the judgment, including the Arbitrator's order of reinstatement.  JA 32 (docket).

## SUMMARY OF THE ARGUMENT

The District Court erred by refusing to vacate the Award as "clarified" and by granting the Union's renewed cross-motion for summary judgment to enforce that Award.  The District Court refused to enforce the original Award because the Arbitrator failed to specify what she found Woodward to have said or did, as the Award generically concluded only that he used "inappropriate language."  It thus remanded the case back to the Arbitrator to specify her factual findings.

In her "clarification," the Arbitrator doubled down on what she wrote before.  She parroted the language of the original Award that Woodward used "inappropriate language," but refused to say what words he actually used.  The District Court was correct the first time that the Arbitrator's vague characterization of Woodward's conduct as "inappropriate" was inconsistent with the dominant and well-established public policy against sexual harassment.  Its conclusion that the "clarification" somehow corrected this flaw in the original Award defies logic.

Moreover, the Arbitrator disregarded the remand order. For nearly two years, she did not respond, and when she finally did so, she refused to answer the question of what Woodward said and did. The Arbitrator's recalcitrance towards this pivotal question reflects her recognition that if she made specific factual findings, her Award of reinstatement could not stand. The parties agreed that if Woodward said the things that Lawson and Ferringer testified he said, he should be terminated. This Court held in *Stroehmann Bakeries, Inc. v. Local 776, International Brotherhood of Teamsters*, 969 F.2d 1436 (3d Cir. 1992), that "an award which fully reinstates an employee accused of sexual harassment without a determination that the harassment did not occur violates public policy." *Id.* at 1442. The remand order specifically referenced the established law under *Stroehmann*, and thus the Arbitrator understood that specific factual findings could lead the District Court to vacate her Award. Rather than comply with the remand order, the Arbitrator committed to defend her order of reinstatement by refusing to say which witnesses she credited and by refusing to make any specific factual findings regarding what Woodward said or did.

This should have caused the District Court to vacate the Award. But rather than hold the Arbitrator accountable for her refusal to comply with the remand order, the District Court erroneously relied on a rationalization of the Award and the "clarification" that cannot be found within the four corners of those two documents. The District Court theorized what the Arbitrator might have meant. This was error.

Taken together, the District Court should have vacated, not enforced, the Award as "clarified."

## ARGUMENT

### I.    Standard of Review.

Review of a labor arbitration generally is limited. *United Paperworkers Intern'l, AFL-CIO, v. Misco, Inc.*, 484 U.S. 29, 36 (1987). However, "[a]s with any contract, . . . a court may not enforce a collective bargaining agreement that is contrary to public policy," and "[i]f the contract as interpreted by [an arbitrator] violates some explicit public policy, [courts] are obliged to refrain from enforcing it." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). Thus, "under an exception to the general rule, a court may vacate an award if it violates a 'well-defined and dominant public policy, discerned by reference to the laws and legal precedents and not from general

considerations of supposed public interests.'" *Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) (quoting *W.R. Grace & Co.* 461 U.S. at 766); *see also Eastern Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000).

In order to vacate an arbitrator's award, a court must first determine that the public policy is "well-defined" and "dominant," and second, must find that the award is contrary to that public policy. *Exxon Shipping Co.*, 73 F.3d at 1291-1292. This Court's review of a district court's decision to vacate or confirm an arbitration award is plenary. *See e.g.*, *Verizon Pa. LLC v. Commc'ns Workers of Am.*, 13 F.4th 300, 306 (3d Cir. 2021).

## II. There is A Well-Defined and Dominant Public Policy Prohibiting Sexual Harassment.

As to the first prong of the test, both the parties and the District Court agreed that there is a well-defined and dominant public policy against sexual harassment in the workplace. Title VII of the Civil Rights Act of 1964 ("Title VII") requires employers to maintain workplaces free from sexual harassment. 42 U.S.C. § 2000e, *et seq.* In *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), the Supreme Court held that Title VII's prohibition against sexual harassment includes the

creation of a "hostile work environment." *Id*. at 57. Employers are liable for sexual harassment between fellow employees of which it knew or should have known and "failed to take prompt and appropriate remedial action." *Huston v. Procter & Gamble Paper Prods.*, 568 F.3d 100, 104 (3d Cir. 2009); *see also* 29 C.F.R. § 1604.11.

The Commonwealth of Pennsylvania also recognizes the explicit, well-defined and dominant public policy against workplace sexual harassment in its statutory scheme. Section 5(a) of the Pennsylvania Human Relations Act ("PHRA") prohibits discrimination on the basis of sex and has been interpreted to include sexual harassment. 43 Pa. Cons. Stat. § 955(a). Like Title VII, an employer can be liable for sexual harassment where "it knows or should have known of the conduct and fails to take immediate and appropriate corrective action." *See* Penn. Human Relations Commission, *Guidelines on Sexual Harassment*, Pa. B. Dec. No. 81-201 (Jan. 30, 1981).

For these reasons, this Court in *Stroehmann*, held that "there is a well-defined and dominant public policy concerning sexual harassment in the workplace which can be ascertained by reference to law and legal precedent." 969 F.2d at 1441. The Court also held that there is "a well-

29

defined, dominant public policy favoring voluntary employer prevention and application of sanctions against sexual harassment in the workplace exists." *Id.* at 1442. Quoting 29 C.F.R. § 1604.11, the Court explained that an employer is expected to "'take all the steps necessary to prevent sexual harassment from occurring.'" *Id.*

## III. The Award Conflicts With Public Policy.

As to the second prong, there was no disagreement that *if* Woodward said what two witnesses testified he said, then he would be guilty of sexual harassment and he could not be reinstated. Recognizing that the original Award made no findings on this critical fact, the District Court ordered the Arbitrator to make them. But it then erred by concluding that the Award as "clarified" did not conflict with the public policy against sexual harassment in the workplace. It was not clarified.

In her original Award, the Arbitrator found that Woodward "said inappropriate comments and used foul language during the incident." JA 62 (Award). As Woodward denied saying anything other than using profanity (which was common in the plant), the Arbitrator's conclusion that Woodward used both inappropriate *and* foul language necessarily

30

meant that she credited the testimony of Lawson and Ferringer over Woodward's denials.

Believing that the Award was not so clear, the District Court remanded the case back to the Arbitrator to specify her factual findings. *See, e.g.*, *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991) (explaining that "a remand for clarification of the intended meaning of an arbitration award is appropriate" as it avoids the potential for the court's misinterpretation of the award); *Off. Prof. Empl. v. Brownsville Gen. Hosp.*, 186 F.3d 326, 332 (3d Cir. 1999) (same).

In doing so, the District Court necessarily recognized that the original Award should not be enforced. If Woodward committed the offenses for which he was accused, the Arbitrator's order of reinstatement was inconsistent with the public policy against sexual harassment, citing *Stroehmann*, in which this Court upheld vacating an award on this basis.[2] And the Union conceded this point at oral argument. It acknowledged that if Woodward engaged in the conduct

---

[2] The District Court initially denied the Union's motion to dismiss because the allegations, if true, constituted sexual harassment under the law.

as alleged, it was sexual harassment and he should not be returned to the plant.

The Arbitrator did not want to obey the Court's order. She did nothing for almost two years. Then when pressed, she provided the "clarification." Whatever can be said be said about that two-page document, there can be no serious dispute that the Arbitrator did not do what the District Court asked her to do. She did not specify her factual findings or make any credibility determinations.

While that should have led the District Court to either vacate the Award or remand it back again, the District Court instead glossed over the Arbitrator's failures and omissions. Perhaps tired of dealing with the Arbitrator, the District Court accepted a rationale of the Award "as clarified" that has no basis in the words used by the Arbitrator.

## A.   The Purported Clarification Was Nothing of the Sort.

The District Court erred in its conclusion that the Arbitrator's clarification resolved any ambiguity in her factual findings. The Arbitrator's "clarification" failed to specify what she found Woodward to have said and did. In her clarification, the Arbitrator concluded that both Woodward and Lawson used "inappropriate language" and raised

their voices and that Lawson, not Woodward, was the instigator.  But
these assertions were simply a rehashing of what the Arbitrator wrote
in her original Award.  *Compare* JA 166 (Award) with JA 200
(clarification letter).  There, the Arbitrator said the exact same thing:

> Even though [Woodward's] language was not appropriate
> when he raised his voice and used inappropriate words
> during the argument, in my opinion his actions were the
> same as Ms. Lawson's actions because she raised her voice
> and also used inappropriate language.  He was not the one
> that caused the argument. . .

JA 166 (Award).  In its original decision on the parties' cross-motion for
summary judgment, the District Court viewed these findings as
inadequate to determine whether the Award conflicted with public
policy.  The Arbitrator's repeating of them in the "clarification" two
years later did not and could not have resolved the ambiguities that led
to the remand in the first place.

The District Court offered little explanation for its conclusion to
the contrary.  It correctly recognized that the Arbitrator was required
by the remand to address two issues: "whether [Woodward] engaged in
the described conduct and, if so, whether such conduct constituted
sexual harassment."    JA 16 (Sept. 23, 2024 Memorandum Order).
Other than repeating what the Arbitrator had said in both the Award

and the clarification – that both Woodward and Lawson used inappropriate language – the District Court failed to explain how the Arbitrator's recitation of this phrase the second time around answered the remanded question of whether Woodward engaged in the described conduct.

The Arbitrator's labeling of Woodward's words as "inappropriate" – whether in the original Award or in the "clarification -- simply begs the question as to what he actually said.  Her repeated assertion that Lawson also used "inappropriate" words adds nothing to the analysis. The Arbitrator's recitation of the witnesses' testimony about the incident refutes any comparison between the statements by Woodward and Lawson beyond the most generic labeling of their conduct.  This is precisely why the District Court denied the Union's motion to dismiss in the first instance and remanded it back to the Arbitrator on summary judgement.

The Chief Magistrate Judge and the District Judge seemingly understood the "clarification" was lacking.  At oral argument, the Chief Magistrate Judge lamented the absence of a clear finding.  He expressly found in the Report & Recommendation, adopted by the District Court,

that "the findings of the Arbitrator's clarification remain less than the picture of clarity." Their conclusion that the Arbitrator somehow resolved any ambiguity in the original Award is fiction.

## B. The Arbitrator Refused to Comply With the Remand Order.

In enforcing the Award as "clarified," the District Court erroneously relied on one sentence in the clarification: "The arbitrator did not find the grievant engaged in sexual harassment and the Company did not contend in his termination that he was involved in sexual harassment."[3] JA 200 (clarification letter). That sentence cannot be the basis for enforcing the Award.

As described above, the District Court correctly recognized that the Arbitrator was expected to describe "whether [Woodward] engaged in the described conduct and, if so, whether such conduct constituted sexual harassment." JA 16 (Sept. 23, 2024 Memorandum Order). The

---

[3] The Chief Magistrate Judge misquoted this sentence in his Report & Recommendations. Welch's pointed out the error in its objections to the Report & Recommendation, acknowledging that it likely was a scrivener's error. JA 262 (brief in support of objections). In its decision adopting the Report & Recommendation, the District Court erroneously criticized Welch's for noting the error, despite that the substance of its argument was based on the Chief Magistrate Judge taking the sentence out of context, not his misquoting of the language. JA 18 (Sept. 23, 2024 Memorandum Order).

Arbitrator never addressed the first issue and therefore was not permitted by the remand order to leapfrog over it to reach the second. She was required to specify what Woodward did and then assess whether the conduct constituted sexual harassment. The Arbitrator never did that, and her attempt to label the unspecified conduct as "not sexual harassment" contradicts the remand order. *See, e.g.*, *Stroehmann*, 969 F.2d at 1440 n.2 (explaining that arbitrator's conclusion regarding the grievance cannot be construed to mean the arbitrator fully considered the evidence since the substance of the award, taken as a whole, demonstrates that the arbitrator did not resolve any credibility determinations).

In *Brown v. Witco Corp.*, the Court of Appeals for the Fifth Circuit held that an arbitrator could not disregard a federal court's remand order. *See* 340 F.3d. 209, 221 (5th Cir. 2003).[4] There, the award was remanded by the district court to the arbitrator to clarify the calculation of backpay. The arbitrator's subsequent clarification exceeded the scope of the remand. The Fifth Circuit held that the arbitrator

---

[4] *See also Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 389 F. Supp. 3d 687 (N.D. Cal. 2019) (vacating subsequent clarification by arbitrator that exceeded the scope of the court's earlier remand).

"[c]learly . . . does not" have "the authority to disregard the express terms of a federal court's remand order."[5]  *Id.*  This is consistent with the longstanding "mandate rule," that a lower court or agency "must comply strictly" with the remand issued by the reviewing court.  *See, e.g.*, *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 203, n.13 (3d Cir. 2004).

The District Court should not have excused the Arbitrator's refusal to specify what Woodward did and then rubber stamp her statement that it was not sexual harassment.  Federal law gives arbitrators great latitude but does not permit them to thumb their noses at the federal courts.  The Arbitrator sat on the remand for almost two years, despite the Supreme Court's preference for arbitration is based in large part on its prompt resolution of those disputes.  *See, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). But however long she makes parties before her wait, the Arbitrator should not treat judges in such a fashion.

---

[5] In *Verizon*, this Court cited affirmatively to *Brown* as standing for the proposition that the arbitrator exceeded the scope of the remand order. 13 F.4th at 309, n.43.

Despite the clarity of the remand, she refused to answer a straightforward question: what did she understand Woodward to have said?  The Arbitrator could not have been confused by the question; she chose not to answer it.  While Welch's objects to the District Court's attempt to guess what the Arbitrator might have meant, it is really not a mystery: she meant to not answer the remand.  The Arbitrator seemingly understood that if she expressly credited Lawson and Ferringer's testimony, the Award of reinstatement had to be reversed under *Stroehmann*.  In order to protect the result she had reached, she refused to say who she had believed or what she had found.  The District Court's effort to bring this proceeding to a close did not require it to ignore the impudence of the Arbitrator.

### C.    The Arbitrator's Statement About Sexual Harassment Rests on Her Reading of the Termination Letter.

To identify a finding that the Arbitrator did not make, the District Court took the Arbitrator's phrase about sexual harassment out of context from the entirety of the "clarification." After setting out the substance of the termination letter, the Arbitrator explained: "This arbitrator did not find sexual harassment to be one of the charges the Company outlined against [Woodward]. It was not included in the

discharge letter provided to" him.  The Arbitrator then explained that she "based her findings on the reasons the Company terminated the grievant, which did not include a charge of sexual harassment."  JA 199 (clarification letter).  She then went on to reiterate that Woodward used inappropriate language for which Welch's had just cause.  Thus, in context, the Arbitrator's conclusory statement that she did not find that Woodward engaged in sexual harassment is based on her apparent belief that the termination letter did not "charge" him with sexual harassment.

The District Court's reliance on this sentence nonetheless was erroneous.  First, although Welch's termination letter did not use the phrase "sexual harassment," it might as well have.  It expressly stated that Woodward was terminated because he had "creat[ed] a hostile work environment" based upon his "threatening and intimidating behavior and language," which was "abusive, sexually explicit and derogatory towards another co-worker and women in general."  JA 43 (Award).  A "hostile work environment" is the precise phrase used by the Equal Employment Opportunity Commission, the PHRA, and the Supreme Court in *Meritor Savings Bank v. Vinson*, when discussing

this type of sexual harassment.  And of course, verbal statements that are sexually explicit or derogatory towards an individual based on their gender can create a hostile work environment.  *See* 29 C.F.R. § 1604.11.  It is difficult to imagine a more direct accusation of sexual harassment than what is contained in the termination letter.

Acknowledging the Arbitrator's reference to the language of the termination language, the District Court focused on the Arbitrator's additional phrase that she did "not find that the grievant engaged in sexual harassment," assigning it some independent meaning. JA 17 (Sept. 23, 2024 Memorandum Order).  Other than the fact that the Arbitrator used the word "and," nothing in the "clarification" supports such an assignment.  She did not provide any explanation for the phrase other than her view of the words of the termination letter.  *See Stroehmann*, 969 F.2d at 1440 n. 2 (explaining that arbitration award needs to be read as a whole); *Broth. of Locomotive Engineers v. ICC*, 885 F.2d 446, 451 (8th Cir. 1989) (language of the award must be "read as a whole").

Regardless, it is the underlying conduct, not the label applied to it, that determines whether an award conflicts with the public policy

against sexual harassment.  Again, the Arbitrator failed to follow the District Court's remand order and refused to specify what Woodward actually said or did.  In *Stroehmann*, the words "sexual harassment" were not used — the grievant there was terminated for "immoral conduct."  969 F.2d at 1439.  This Court nonetheless vacated the award, holding that the order of "reinstatement without a determination of the merits of the allegation violates public policy."  *Id*. at 1443.  Thus, *Stroehmann* compels a focus on what the grievant did, not whether the company or the arbitrator used the phrase "sexual harassment."

Had the District Court followed *Stroehmann*, it should have vacated the Award because the Arbitrator found that Woodward committed the offenses for which he was accused.  Her crediting of the reasons set forth in the termination letter demonstrates that she found merit to the Company's reasons for terminating Woodward: creating a hostile work environment based upon disrespectful language that was abusive, sexually explicit and derogatory towards a female co-worker and women in general.  As the District Court recognized in its denial of the Union's motion to dismiss, this conduct, as described in the termination letter, "implicat[es] sexual harassment" and Woodward's

"conduct aligned with the EEOC's definition of sexual harassment." JA 105 (Sept. 30, 2020 Memorandum Order). While this was in the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the District Court recognized that if the accusations of the termination letter were in fact true, it agreed with the Magistrate Judge that this was grounds for vacating the Award in accordance with *Stroehmann*. *Id*.; JA 97 (Aug. 6, 2020 Report and Recommendation).

The Union too agrees. It admitted to the District Court that if Woodward was guilty as "charged" – to use the Arbitrator's formulation – that conduct constituted sexual harassment.  It also admitted that in that circumstance, Woodward should not be reinstated.[6]

### D.   The District Court's Determination Was Not Based On the Language of the Award or the "Clarification".

Effectively conceding that the Arbitrator offered no explanation for her conclusion that Woodward did not engage in sexual harassment, the District Court improperly relied on a rationale for enforcing the

---

[6] In claiming that he should nonetheless get his job back, the Union's position was that it had discredited his accusers.  Had the Arbitrator bought Woodward's story that he merely used profanity, never used the words for which he was accused and just defended himself, she would have said so.  The Arbitrator's nearly two-year delay in responding to the Court's remand order and her refusal to make express findings demonstrates that the Union's position is fantasy.

Award that cannot be found in that document or the clarification. The Chief Magistrate Judge explained that the Arbitrator made a "finding that [Woodward's] conduct did not rise to the level of sexual harassment," citing to Title VII's "sufficiently severe or pervasive" standard and supporting cases. JA 3 (April 16, 2024 Report and Recommendation). The District Court adopted this recommendation, but insisted that the "severe and pervasive" standard "did not form the basis of [the Chief Magistrate Judge's] decision." JA 18-19 (Sept. 23, 2024 Memorandum Order).

The District Court's attempt to excise the "severe and pervasive" discussion from the Report & Recommendation is an acknowledgement that Chief Magistrate Judge overstepped. A reviewing court is not permitted to rule on the merits or substitute its judgment for the arbitrator. *See Stroehmann*, 969 F.2d at 1444. The Arbitrator made no findings to state or suggest that she believed that Woodward's conduct was neither severe nor pervasive or that she did not think it rose to the "level" of sexual harassment warranting termination. These assertions by the Chief Magistrate Judge therefore could not have been grounds for enforcing the Award.

In nonetheless adopting the Report & Recommendation, the District Court instead asserted that Woodward's conduct did not constitute sexual harassment warranting dismissal and that a suspension was appropriate. But once stripped of the gloss placed on it by the Chief Magistrate Judge, the conclusion that Woodward did not engage in sexual harassment is a single phrase in the clarification, devoid of any explanation, let alone any of the requested factual findings, to justify enforcing the Award. The only explanation to be found in the clarification is the Arbitrator's repeated reference to the language in the termination letter and her assertion that it did not "charge" him with sexual harassment.[7]

To the extent that the District Court believed that the Arbitrator meant that Woodward's conduct did not constitute the legal definition of sexual harassment, this simply reintroduces the Chief Magistrate Judge's reference to the "severe and pervasive" standard through the backdoor. The Chief Magistrate Judge cited to two cases for his view.

---

[7] Both the Award and the "clarification" demonstrate that the Arbitrator had a tendency of repeating the same point in multiple phrases and sentences. Her sentence that Woodward did not commit sexual harassment *and* that the Company did not charge him with sexual harassment is stylistic, rather than the assertion of independent points.

And while it is not clear whether the District Court too relied upon on them, neither aids the District Court's enforcement of the Award here.

In *Communication Workers of Am. v. Southeastern Electric Co-op.*, 882 F.2d 467 (10th Cir. 1989), the Tenth Circuit upheld the enforcement of an award reducing the termination to a suspension. In that case, the Tenth Circuit explained that the arbitrator set out specific factual findings based on conflicting evidence and recognized that this was a one-time offense and the grievant was both penitent and apologetic. *Id*. at 469, n.4. This Court in *Stroehmann* distinguished *Communication Workers*, explaining that the *Stroehmann* arbitrator "studiously avoided" making a factual finding on the merits of the sexual harassment allegations. 969 F.2d at 1443.

The second case cited by the Chief Magistrate Judge, *ITT v. United Steel, Paper & Forestry, Rubber, Mfg.*, 5:21-cv-00205, 2021 WL 3362060 (E.D. Pa. Aug. 3, 2021), can be distinguished on the same basis. In that case, the arbitrator specifically found that the alleged victim never saw the offending message by the grievant and did not feel personally harassed. *Id*. at *2. The grievant later apologized for his conduct. The arbitrator then carefully assessed his factual findings

45

against the law on discrimination and harassment, concluding that the grievant's conduct warranted a suspension only. *Id.* at *3.

None of this can be said of the Award or clarification here. The Arbitrator refused to make any factual findings. And while she thought that Woodward's conduct was the same as Lawson's, that was based only on her generic conclusion that they both raised their voices and used "inappropriate language."[8] The Union conceded at arbitration that it asked the Company to reduce Lawson's termination to a suspension because in its view, she did nothing wrong. Further, the Award establishes that Woodward was never apologetic for his conduct and it was not his first offense.

The District Court's struggle to rationalize its enforcement of the Award and "clarification" demonstrates only that the Arbitrator avoided doing what the Court's remand asked her to do: provide specific factual findings as to what Woodward said and did and then assess that conduct in light of the public policy against sexual harassment in the workplace.

---

[8] Indeed, any other conclusion is not be supported by the Arbitrator's recitation of facts in the original Award. For whatever may be said about the Arbitrator's conclusion, there is no basis in the Award to find that Woodward and Lawson each said the exact same thing *verbatim*.

All of this should have caused the District Court to vacate the Award. Implicit in the District Court's decision is an acknowledgment that the Arbitrator believed that Woodward did commit the offenses with which he was charged, despite her refusal to clearly say so. The Union conceded that he should not get his job back in that circumstance. To the extent there is ambiguity in this regard, then a second remand to the Arbitrator is unfortunately necessary.[9]

## CONCLUSION

For these reasons, Welch Foods, Inc. respectfully requests that Court reverse the judgment of the District Court, grant summary judgment to it by vacating the Award, and grant such other and further relief as the Court deems just and appropriate.

---

[9] Welch's recognizes that a significant amount of time has passed since Woodward's termination, but much of this is due to the Arbitrator's near two-year delay in responding to the remand. Under the regulations of the FMCS, an arbitrator is required to "make awards no later than 60 days from the date of the closing of the record." 29 C.F.R. § 1404.14. The fundamental job of an arbitrator is to decide the issues before her without delay, and the law has long recognized that an arbitrator's failure to act is an independent ground for vacating an award. *See, e.g.*, 9 U.S.C. § 10. Welch's suspects that the passage of time strongly influenced the District Court's decision. But the Arbitrator's years of inaction and stubborn resistance to specifically describing what Woodward did are not a basis for enforcing the Award.

Dated: January 7, 2025

Respectfully submitted,

SEYFARTH SHAW LLP

By:  */s/ Robert A. Fisher*

Robert A. Fisher
Massachusetts Bar No. 643797
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
Email: rfisher@seyfarth.com

John Ayers-Mann (admission pending)
Massachusetts Bar No. 703184
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
Email: jayers-mann@seyfarth.com

COUNSEL FOR APPELLANT
WELCH FOODS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January, 2025, a true copy of the foregoing document and Joint Appendix was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via overnight mail, postage prepaid to the following counsel of record for the Appellee:

Ernest B. Orsatti
Quatrini Law Group
941 Penn Avenue
Pittsburgh, PA 15222
ebo@qrlegal.com

*s/Robert A. Fisher*
Robert A. Fisher
Counsel for Appellant
Welch Foods, Inc.

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE-STYLE REQUIREMENTS AND WITH LOCAL
## APPELLATE RULE 31.1(C)

I am counsel for Appellant Welch Foods, Inc. I certify that:

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because:

> This brief contains 9,051 words, excluding the parts of the brief excluded by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

> This brief has been prepared in a proportionally spaced typeface using Microsoft Word in plan, 14-point Century Schoolbook typeface; footnotes appear in a plain, 14-point Century Schoolbook typeface.

3.      Pursuant to Local Appellate Rule 31.1(c), the electronic brief is identical to the text in the paper copies.

4.      Pursuant to Local Appellate Rule 31.1(c), a virus detection program, CrowdStrike Falcon, was run on the file and no virus was detected.

*s/ Robert A. Fisher*
Robert A. Fisher

Counsel for Appellant
Welch Foods, Inc.

Dated: January 7, 2025

## CERTIFICATION OF COMPLIANCE WITH LOCAL APPELLATE RULE 28.3(D)

Welch Foods, Inc. certifies that at least one of the attorneys whose names appear on the brief is a member of the bar of this Court or has filed an application for admission pursuant to Local Appellate Rule 46.1

*s/ Robert A. Fisher*
Robert A. Fisher

Counsel for Appellant
Welch Foods, Inc.

Dated: January 7, 2025

No. 24-2889

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

## WELCH FOODS, INC.,

*Appellant,*

v.

## GENERAL TEAMSTERS LOCAL 397,

*Appellee.*

---

Appeal from a Final Judgment of the United States District Court for the Western District of Pennsylvania, Case No. 1:19-CV-00322-SPB-RAL  (September 23, 2024)

---

## JOINT APPENDIX VOLUME I (JA 1- JA 22)

---

Robert A. Fisher
Massachusetts Bar No. 643697
SEYFARTH SHAW LLP
Two Seaport Lane,
Suite 1200
Boston, Massachusetts 02210
617-946-4800 (Telephone)
617-946-4801 (Facsimile)
rfisher@seyfarth.com

John Ayers-Mann (*admission pending*)
Massachusetts Bar No. 703184
SEYFARTH SHAW LLP
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
(310) 277-7200 (Telephone)
(310) 201-5219 (Facsimile)
jayers-mann@seyfarth.com

COUNSEL FOR APPELLANT

# TABLE OF CONTENTS

## VOLUME I (Appended to Appellant's s Brief)

<u>**Document Title**</u>                                                           <u>**Page**</u>

Notice of Appeal (October 7, 2024 ) ........................................................... 1

Report and Recommendation on Cross Motions for Summary
    Judgment (April 16, 2024) ................................................ 3

Memorandum Order (September 23, 2024) ........................................... 13

Judgment Order (September 23, 2024) ................................................ 22

## VOLUME II

Docket Entries ........................................................................................ 23

Complaint (October 31, 2019) ................................................................ 33

Report and Recommendation on Defendant's Motion to Dismiss
    (ECF No. 4) (August 6, 2020) ...................................................... 90

Memorandum Order (September 30, 2020) ......................................... 101

Answer to Complaint (October 6, 2020) .............................................. 109

Report and Recommendation (January 25, 2021) .............................. 114

Memorandum Order (August 12, 2021) ............................................... 123

Text Minute Entry and Text Order (May 8, 2023) ............................. 128

Status Report (August 7, 2023) ........................................................... 129

Plaintiff's Concise Statement of Material Facts in Support of its
    Motion for Summary Judgment (September 8, 2023) ................ 134

Plaintiff's Appendix of Exhibits for Renewed Motion for Summary
    Judgment (September 8, 2023) .................................................... 141

Defendant's Brief in Support of its Renewed Cross Motion for Summary Judgment and in Opposition to Plaintiff's Renewed Motion for Summary Judgment (September 27, 2023) .............. 201

Transcript of Zoom video proceeding on March 14, 2024 .................... 217

Plaintiff's Objections to Magistrate Judge's April 16, 2024 Report and Recommendation (April 30, 2024) ....................................... 247

Brief in Support of Plaintiff's Objections to Magistrate Judge's April 16, 2024 Report and Recommendation (April 30, 2024).............. 251

Defendant's Brief in Opposition to Plaintiff's Objections to Magistrate Judge's April 16, 2024, Report and Recommendations (May 14, 2024) ............................................... 272

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WELCH FOODS, INC., | Civil Action No. 19-322 Erie |
| Plaintiff, | |
| v. | |
| GENERAL TEAMSTERS, LOCAL UNION NO. 397, | |
| Defendant. | |

**PLAINTIFF WELCH FOODS, INC.'S NOTICE OF APPEAL**

Notice is hereby given that the Plaintiff, Welch Foods, Inc., appeals to the United States Court of Appeals for the Third Circuit from this Court's Final Judgment in this matter, dated September 23, 2024 (Dkt. 67), and certain of this Court's interim findings that lead thereto, including the Report and Recommendation Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment, dated April 16, 2024 (Dkt. 61) and the Court's Order Adopting the Report and Recommendation, dated September 23, 2024 (Dkt. 66).

314022985v.1

DATED:  October 7, 2024                    Respectfully submitted,

                                           SEYFARTH SHAW LLP


                                           By: */s/ Robert A. Fisher*
                                               Robert A. Fisher
                                               rfisher@seyfarth.com

                                               SEYFARTH SHAW LLP
                                               Seaport East
                                               Two Seaport Lane, Suite 1200
                                               Boston, Massachusetts  02210-2028
                                               Telephone:  (617) 946-4800
                                               Facsimile:  (617) 946-4801
                                               Attorneys for Defendant




## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed and served on all counsel of record via the Court's electronic filing system on October 7, 2024.

                                           */s/ Robert A. Fisher*
                                           Robert A. Fisher

314022985v.1

**JA 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

WELCH FOODS, INC., A COOPERATIVE, )
d/b/a WELCH'S                     )
                                 )
            Plaintiff             )      1:19-CV-00322-SPB
                                 )
    vs.                           )      RICHARD A. LANZILLO
                                 )      Chief United States Magistrate Judge
                                 )
GENERAL TEAMSTERS, LOCAL UNION    )      REPORT AND RECOMMENDATION ON
NO. 397,                          )      CROSS MOTIONS FOR SUMMARY
                                 )      JUDGMENT
            Defendant             )
                                 )      IN RE: ECF NOS. **51, 56**
                                 )

I.      Recommendation

The pending cross motions for summary judgment are before the Undersigned for Report

and Recommendation pursuant to 28 U.S.C. § 636 and Local Civil Rule 72.D.  It is respectfully

recommended that Defendant General Teamsters Union Local 397's motion (ECF No. 56) be

**GRANTED** and that Plaintiff Welch Foods Inc.'s motion (ECF No. 51) be **DENIED**.

II.     Report

A.      Background

Plaintiff Welch Foods, Inc. (Welch Foods) commenced this action to vacate a labor

arbitration award entered pursuant to Section 301 of the Labor-Management Relations Act of

1947, as amended, 29 U.S.C §185 *et seq*.   *See* ECF No. 1.  Welch Foods and Defendant General

Teamsters Local Union No. 397 (Union) are parties to a collective bargaining agreement (CBA).

On January 21, 2019, following an internal investigation, Welch Foods notified Pat Woodward

(Grievant), a male employee and member of the Union, that it was terminating his employment as

the result of his conduct in an employee breakroom on January 11, 2019.  Welch Foods'

1

JA 3

January 21, 2019 termination letter advised Grievant that his discharge was based upon his engaging in "threatening and intimidating behavior and language" in violation of Welch Foods' workplace conduct rules and his having created "a hostile work environment." ECF No. 1- 2, p. 3. The termination letter further specified that Grievant had used language toward a female employee (and women in the workplace generally) that was "abusive, sexually explicit, and derogatory." *Id.* Specifically, Welch Foods' investigation revealed that during the incident, Grievant "referred to his female co-workers as 'self-serving vagina bitches," and "f\*\*king worthless"; he pointed to his groin area and stated, "if you don't have one of these you are no good"; and he called the female co-worker involved in the incident a "f\*\*king no good vagina bitch" and repeatedly used the term "f\*\*king bitch."

The Union filed a grievance challenging the Grievant's termination and requesting that he "be reinstated to full time employment." The grievance was processed through the procedures outlined in the CBA and ultimately proceeded to an arbitration hearing conducted before Arbitrator Michelle Miller-Kotula on April 26, 2019. On October 26, 2019, the Arbitrator issued her Opinion and Award in which she concluded that Welch Foods "had just cause to discipline the grievant" but "the discipline imposed on the grievant was too harsh in this instance." The Arbitrator reduced Grievant's discipline to a ten-day suspension and directed Welch Foods to make him whole for losses incurred.

On October 31, 2019, Welch Foods filed this action to vacate the reinstatement Award on the grounds that it violated a well-defined and dominant public policy against sexual harassment in the workplace. The Court denied the Union's motion to dismiss the Complaint. ECF Nos. 4, 21. After the Union answered the Complaint, it and Welch Foods filed cross-motions for summary judgment. *See* ECF Nos. 24, 33. Upon review, the Undersigned concluded that the

Arbitrator's award was ambiguous as to whether she had found that Grievant had engaged in sexual harassment such that the arbitration award reinstating him violated the well-defined policy against sexual harassment. *See* ECF No. 38, pp. 6-8; *Stroehmann Bakeries, Inc. v. Loc. 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436, 1441 (3d Cir. 1992) (holding that "an award which fully reinstates an employee accused of sexual harassment without a determination that the harassment did not occur violates public policy"). A remand to the Arbitrator was recommended with instructions that she clarify her factual findings regarding sexual harassment. *Id.*, p. 8. It was also recommended that the competing motions be dismissed without prejudice to their refiling upon the Arbitrator's clarification. *Id.* The District Court adopted these recommendations and ordered the matter remanded to the Arbitrator for clarification on August 12, 2021. ECF No. 42.

On May 8, 2023, the Court conducted a status conference and asked the parties for an update regarding the Arbitrator's clarification of her award. ECF Nos. 44, 46. At the conclusion of the status conference, the parties were ordered to contact the Court upon receipt of the Arbitrator's clarification. ECF No. 46 (text order). On August 7, 2023, counsel for the Union filed a status report indicating that the Arbitrator had completed a clarification of her prior decision. ECF No. 47. The Court then reopened the case and set deadlines for filing renewed motions for summary judgment. ECF No. 50. Welch Foods renewed its motion for summary judgment (ECF No. 51) as did the Union (ECF No. 56). The Undersigned conducted oral argument on the motions on March 14, 2024. *See* ECF No. 60 (minute entry). The cross-motions are ripe for decision.

B.      Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under this standard

"the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome

under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*,

957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S.

at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283,

1287-88 (3d Cir. 1991).

The district court's standard of review is further circumscribed in this case by the well-

established policy favoring resolution of labor disputes by arbitration. *United Paperworkers*

*Int'l Union v. Misco*, 484 U.S. 29, 36 (1987).  The Supreme Court has cautioned that federal

courts "play only a limited role when asked to review the decision of an arbitrator." *Id.*; *see also*

*W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 764

(1983). "Courts are not authorized to reconsider the merits of an award even though the parties

may allege that the award rests on errors of fact or on misinterpretation of the contract." *Misco*,

484 U.S. at 36.  To do otherwise would undermine "the federal policy of settling labor disputes

by arbitration … [by giving] courts [] the final say on the merits of the awards." *Id.* (citation

omitted).  Accordingly, a district court may vacate an arbitration award only in exceedingly

4

JA 6

narrow circumstances. *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 1995) ("District courts have very little authority to upset arbitrators' awards."). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38. Indeed, an arbitrator's "'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 578 (3d Cir. 2005) (quoting *Major League Umpires Assoc. v. American League of Professional Baseball Clubs*, 357 F.3d 272, 279-80 (3d Cir. 2004)).

The policy favoring enforcement of labor arbitration awards, however, is not absolute. Courts may refuse to enforce an arbitration award where it interprets a collective bargaining agreement in a manner that violates "some explicit public policy" that is "well defined and dominant…" *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983). Well defined and dominant public is discerned "'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) (quoting *W.R. Grace & Co.*, 461 U.S. at 766). This public policy exception is "slim indeed." *Kinder Morgan Bulk Terminals, Inc. v. United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, & Its Local 1*, 9 F. Supp. 3d 507, 518 (E.D. Pa. 2014). It applies only where the "award create[s] an explicit conflict with an explicit public policy." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 382 (3d Cir. 1995). That is, in determining "whether an award violates public policy, the analysis turns on whether the arbitrator's award 'created any explicit conflict with other laws and legal precedents rather than an assessment of general considerations of supposed public interests.'" *D.A. Nolt, Inc. v. Local Union No. 30 United Union of Roofers, Waterproofers &*

*Allied Workers*, 661 Fed. Appx. 200, 205 (3d Cir. 2016) (citing *Misco*, 484 U.S. at 43 (quoting *W.R. Grace*, 461 U.S. at 766). Thus, "[a]pplication of the public policy exception requires a two-step analysis." *Exxon*, 73 F.3d at 1291-92. "The threshold question is whether a well-defined and dominant public policy can be identified [and], [i]f so, the court must determine whether the arbitrator's award, as reflected in his or her interpretation of the agreement, violated the public policy." *Id.*

    C.    Discussion and Analysis

        1.  The well-defined and dominant public policy concerning sexual harassment

As discussed in the Undersigned's prior Report, the first element of the public policy exception is satisfied. The Court of Appeals for the Third Circuit has recognized "a well-defined and dominant public policy concerning sexual harassment in the workplace which can be ascertained by reference to law and legal precedent." *Stroehmann Bakeries*, 969 F.2d at 1441. This public policy derives from several sources, including:

    • Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2(a)(1), which prohibits employment discrimination because of sex;

    • Supreme Court precedent such as *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64–67, (1986), which interprets Title VII's prohibition to include sexual harassment in the workplace that creates a hostile or offensive work environment; and

    • EEOC regulations defining sexual harassment as including "verbal or physical conduct of a sexual nature" that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." 29 C.F.R. § 1604.11(a) (1991) (footnote omitted).

*See also Atwood v. Biondi Mitsubishi*, 1993 WL 244063, at *1 (W.D. Pa. May 12, 1993) ("There is a well-defined and dominant public policy concerning sexual harassment in the workplace.").

2.    The Arbitrator's award, as clarified, does not violate public policy.

Welch Foods argues that the Arbitrator's award, even as clarified, violates the well-defined and dominant public policy concerning sexual harassment in that it fully reinstates Grievant without a determination that the harassment did not occur.  The Court is constrained to disagree.

The Arbitrator's initial award carefully reviewed the testimony and other evidence adduced during the arbitration proceedings, including the testimony of the female co-worker with whom Grievant had the verbal exchange in the company breakroom.  The award did not include findings regarding that evidence, including any findings whether Grievant engaged in the specific conduct described by the co-worker or whether Grievant's actions constituted sexual harassment.  The clarification sufficiently resolves this ambiguity.  Although the findings of the Arbitrator's clarification remain less than the picture of clarity, she "determined … that both the grievant, and [the co-employee] engaged in inappropriate language in the workplace and that [the co-employee] was the instigator in the incident that occurred."  ECF No. 54-4, p. 3.  She further found that the Grievant "was not determined by [Welch Foods] to be the aggressor" and that, although "[h]is language was not appropriate when he raised his voice and used inappropriate words during the argument, … his actions were the same as [the co-employee's] actions because she raised her voice and also used inappropriate language."  *Id.*  "Ultimately, the "arbitrator did not find sexual harassment occurred during this incident in the workplace…"  *Id.* at p. 4.

The Arbitrator's clarification also stated that the "arbitrator did not find sexual harassment to be one of the charges [Welch Foods] outlined against the grievant" and that sexual harassment "was not included in the discharge letter provided to the grievant."  *Id.*, p. 3.  Welch Foods strenuously disagrees with this conclusion, noting that its termination letter specifically

charged Grievant with "threatening and intimidating behavior and language" that was "abusive, sexually explicit, and derogatory" and that created "a hostile work environment." ECF No. 52, pp. 3, 11-12; ECF No. 1- 2, p. 3. Welch Foods is correct that the absence of the words "sexual harassment" does not preclude a finding of such where the conduct alleged and proven fits the definition. But here, read it their entirety and with due deference to the Arbitrator, the award and clarification reflect her finding that Grievant's conduct did not rise to the level of sexual harassment. This conclusion is not plainly inconsistent with her factual findings. Sexual harassment is present where the conduct is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank*, 477 U.S. at 67 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957 (1972)). *See also Valenti v. Triangle Circuits of Pittsburgh, Inc.*, 419 F. Supp. 2d 701 (W.D. Pa. 2005) (granting summary judgment in favor of employer on determining single incident where vice president showed employee a picture of a naked woman on a motorcycle was not sufficiently severe or pervasive to alter the conditions of employee's employment, and thus did not create hostile work environment under Title VII). The Arbitrator's ultimate assessment was that the Grievant's conduct, while offensive and inappropriate, did not constitute sexual harassment warranting dismissal and that a suspension identical to the suspension imposed upon the female co-worker was the appropriate discipline for the Grievant under the CBA. As clarified, this conclusion does not violate the public policy against sexual harassment in the workplace. *See ITT Engineered Valves, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO CLC, Loc. 36M*, 2021 WL 3362060, at *9 (E.D. Pa. Aug. 3, 2021) (holding that vacatur of arbitration award was not authorized where arbitrator reduced discipline for grievant's alleged harassing conduct

8

from discharge to suspension and thereby did not permit conduct to go "unpunished"). *See also Communication Workers v. Southeastern Elec. Coop.*, 882F.2d 467, 468 (10th Cir. 1989) (declining to vacate arbitration award imposing suspension without pay rather than discharge where employee had committed sexual harassment only one time, was penitent and apologetic, and his record was otherwise unblemished).

III.    Conclusion

Welch Foods' desire to keep its workplace free of conduct such as allegedly committed by Grievant is understandable. Because the Arbitrator's clarification of her award disavows any finding that Grievant engaged in sexual harassment, the Court has no authority to vacate the award. Accordingly, it is respectfully recommended that the Union's motion for summary judgment be GRANTED and that Welch Foods' motion for summary judgment be DENIED. A judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure should be entered accordingly.

IV.    Notice to Parties Concerning Objections

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72((b)(2), and Local Rule 72(D)(2), the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72(D)(2).

9

JA 11

DATED this 16th day of April, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WELCH FOODS, INC., | ) | |
| Plaintiff | ) | C.A. No. 19-322 Erie |
| | ) | |
| | ) | |
| v. | ) | District Judge Susan Paradise Baxter |
| | ) | Chief Magistrate Judge Richard A. Lanzillo |
| GENERAL TEAMSTERS, LOCAL | ) | |
| UNION NO. 397, | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

I.    **BACKGROUND**

Plaintiff Welch Foods, Inc., initiated this action to vacate a labor arbitration award

entered pursuant to Section 301 of the Labor-Management Relations Act of 1947, as amended,

29 U.S.C. § 185, *et seq.,* in relation to Defendant's grievance challenging Plaintiff's termination

of a union employee ("the grievant") for creating a "hostile work environment" by using sexually

abusive language toward his female co-workers. The arbitrator concluded that Plaintiff "had just

cause to discipline the grievant," but determined that "the discipline imposed was too harsh." As

a result, the arbitrator reduced the grievant's termination to a ten-day suspension. Plaintiff filed

this action to vacate the arbitrator's order to reinstate the grievant on the grounds that it violates a

well-defined and dominant public policy against sexual harassment in the workplace.

This matter was referred to Chief United States Magistrate Judge Richard A. Lanzillo for

report and recommendation in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and

Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates, and was subsequently reassigned to

the undersigned, as presiding judge, with Judge Lanzillo remaining as the referred Magistrate

1

Judge for all pretrial proceedings.

Defendant previously filed a motion to dismiss Plaintiff's complaint, which was denied by this Court by Order dated September 30, 2020 [ECF No. 21]. The parties subsequently filed cross motions for summary judgment. [ECF Nos. 24, 33].

On January 25, 2021, Judge Lanzillo issued a Report and Recommendation recommending that this matter be remanded to the Arbitrator for clarification of the following findings of fact in her Award of October 5, 2019:

1. The Arbitrator's specification of her factual findings regarding the sexual harassment allegations against [the grievant]; and

2. If the Arbitrator found merit to those allegations, her consideration of the "pertinent public policy" against sexual harassment in the workplace. (citation omitted).

(ECF No. 38, at p. 8). Judge Lanzillo recommended further that both parties' motions for summary judgment be dismissed, without prejudice to refiling upon clarification of the Arbitrator's Award. (Id.).

By Memorandum Order dated August 12, 2021, this Court adopted Judge Lanzillo's recommendations and remanded this matter to the Arbitrator for clarification, as outlined in Report and Recommendation [ECF No. 42]. The case was then administratively closed pending receipt of the Arbitrator's clarification. [ECF No. 43].

On August 7, 2023, counsel for Defendant filed a status report [ECF No. 47] attaching a copy of the Arbitrator's clarification of her prior decision, which contained responses to the two issues posed in the Memorandum Order [ECF No. 47-1]. Specifically, the Arbitrator clarified that she "did not find the grievant engaged in sexual harassment and the Company did not contend in his termination letter that he was involved in sexual harassment," and that "because

2

JA 14

[the Arbitrator] did not find sexual harassment occurred during this incident in the workplace, the 'pertinent public policy' argument was not applicable to the arbitration award and therefore was not addressed." (ECF No. 47-1, at p. 4).

Upon receipt of the Arbitrator's clarification, the Court reopened this case and the parties renewed their motions for summary judgment. [ECF Nos. 51, 56]. Oral argument on the motions was then heard by Judge Lanzillo on March 14, 2024.

After considering the parties' motions and oral arguments, Chief Magistrate Judge Lanzillo issued a Report and Recommendation on April 16, 2024 ("R&R") recommending that Defendant's summary judgment motion be granted and Plaintiff's summary judgment be denied [ECF No. 61]. In particular, Judge Lanzillo found that, "[b]ecause the Arbitrator's clarification of her award disavows any finding that Grievant engaged in sexual harassment, the Court has no authority to vacate the award." (Id. at p. 9).

Plaintiff filed timely objections to the R&R on April 30, 2024 [ECF No. 62], along with a supporting brief [ECF No. 63], arguing that the Chief Magistrate Judge erred in the following ways: (1) "finding that the Arbitrator's 'clarification sufficiently resolves [the] ambiguity' in the original award as to the Grievant's specific conduct;" (2) "disregarding what the Arbitrator did say in the clarification regarding what the Grievant said to the female co-worker;" (3) "concluding that the Arbitrator did not find that sexual harassment occurred during [the incident in question];" (4) "concluding that the Arbitrator found that the Grievant's conduct did not rise to the level of sexual harassment because it was not severe or pervasive;" (5) "failing to find that the award, even with the clarification, conflicts with the public policy against sexual harassment in the workplace;" and (6) "failing to find that the Arbitrator's two year delay in answering the Court's remand was a dereliction of her duties and an independent basis for vacating the award."

3

(ECF No. 62, at ¶¶ 1-6). Defendant has since filed a brief in opposition to Plaintiff's objections [ECF No. 64]. Plaintiff's objections will now be considered in turn.

## II.   DISCUSSION

### A.   Arbitrator's Clarification Regarding Grievant's Specific Conduct

Plaintiff objects to the Magistrate Judge's finding that the Arbitrator's clarification "sufficiently resolves [the] ambiguity" regarding "whether Grievant engaged in the specific conduct described by the co-worker or whether Grievant's actions constituted sexual harassment." (ECF No. 61, at p. 7). In particular, Plaintiff argues that "[t]he Arbitrator's characterization of [Grievant's] words as 'inappropriate' simply begs the question as to what he actually said." (ECF No. 63, at p. 10). In short, Plaintiff objects to the fact that the Arbitrator's clarification fails to include the exact foul words that were used by Grievant that she considered in making her determination. But the Arbitrator had already recounted those words in her original award. Indeed, the Chief Magistrate Judge aptly observes in his R&R,

> The Arbitrator's initial award carefully reviewed the testimony and other evidence adduced during the arbitration proceedings, including the testimony of the female co-worker with whom Grievant had the verbal exchange in the company breakroom. The award did not include any findings regarding that evidence, including any findings whether Grievant engaged in the specific conduct described by the co-worker or whether Grievant's actions constituted sexual harassment.

(ECF No. 61, at p. 7).

In other words, in her initial award, the Arbitrator failed to adequately state her conclusions as to whether the Grievant engaged in the described conduct and, if so, whether such conduct constituted sexual harassment. In this regard, Judge Lanzillo notes that, in her clarification, the Arbitrator specifies that she "determined... that both the grievant, and [the co-employee] engaged in inappropriate language in the workplace and that [the co-employee] was

4

the instigator in the incident that occurred…," and that ultimately she "did not find sexual

harassment occurred during this incident in the workplace…" (Id.). Thus, Judge Lanzillo did not

err in finding that the Arbitrator's clarification "sufficiently resolves [the] ambiguity" regarding

her findings as to whether Grievant's conduct constituted sexual harassment.

### B.    Arbitrator's Reference to Defendant's Termination Letter

In her clarification, the Arbitrator states that she "based her findings on the reasons the

Company terminated the grievant, which did not include a charge of sexual harassment." (ECF

No. 47-1, at p. 3). Plaintiff argues that the Chief Magistrate Judge erred in failing "to

acknowledge the Arbitrator's crediting of the reasons in the Company's termination letter" and

"ignored that the termination letter described sexual harassment under the law." (ECF No. 63, at

p. 11). According to Plaintiff, "the Magistrate Judge should have found that [the Arbitrator's]

crediting of the termination letter was a finding of sexual harassment." (ECF No. 62, at ¶ 2).

By this, Plaintiff is essentially arguing that Judge Lanzillo should have disregarded the

Arbitrator's express clarification that she "did not find the grievant engaged in sexual

harassment" and, instead, attribute a finding of sexual harassment that does not otherwise appear

in the Arbitrator's conclusion. However, the Chief Magistrate Judge appropriately refused to do

so, finding that "read i[n] their entirety and with due deference to the Arbitrator, the award and

clarification reflect her finding that Grievant's conduct did not rise to the level of sexual

harassment," and noting that "[t]his conclusion is not plainly inconsistent with her factual

findings." (ECF No. 61, at p. 8). The Court finds Judge Lanzillo's reasoning in this regard to be

appropriate and well-founded.

### C.    Misquotation of Arbitrator's Clarification

Plaintiff contends that the Chief Magistrate Judge misquoted the Arbitrator's clarification

5

by stating that "Ultimately, the "arbitrator did not find sexual harassment occurred during this incident in the workplace" (ECF No. 61, at p. 7), arguing that "the quoted sentence does not appear anywhere in the clarification." (ECF No. 63, at p. 11). This argument borders on being disingenuous. While, admittedly, the word "ultimately" is mistakenly included as part of the quotation, the remainder of the quoted statement is taken verbatim from the first line of the final paragraph of the Arbitrator's clarification (ECF No. 47-1, at p. 4).

Plaintiff then adds that, in any event, the quoted language was "taken out of context" because it "ignores the totality of what the Arbitrator said in the clarification." (ECF No. 62, at ¶ 3). In particular, Plaintiff argues that the reason the Arbitrator did not find "sexual harassment" is because she found that the termination letter did not include those words. But, in making this argument, Plaintiff is guilty of doing the very thing it claims the Chief Magistrate Judge has done: it ignores the totality of the Arbitrator's findings.

In her clarification, the Arbitrator expressly states that she "did not find the grievant engaged in sexual harassment **and** the Company did not contend in his termination letter that he was involved in sexual harassment." (ECF No. 47-1, at p. 4). This conclusion is clearly stated in the conjunctive. The Arbitrator then reiterated the first reason in the subsequent paragraph quoted, in part, by Judge Lanzillo, "Because this arbitrator did not find sexual harassment occurred during this incident in the workplace,…" (Id.). These two statements by the Arbitrator fully support the Chief Magistrate Judge's conclusion that the Arbitrator did not find that sexual harassment occurred. Plaintiff's objection in this regard is unfounded.

### D.    Severe or Pervasive Standard

In the R&R, the Chief Magistrate Judge cites the standard for finding sexual harassment, stating that "Sexual harassment is present where the conduct is sufficiently severe or pervasive to

6

alter the conditions of [the victim's] employment and create an abusive working environment."
(ECF No. 61, at p. 8) (citations and internal quotations omitted). By doing so, Plaintiff argues
that Judge Lanzillo "manufactured a rationale that the Arbitrator herself never adopted." (ECF
No. 62, at ¶ 4). However, the standard cited by the Chief Magistrate Judge did not form the basis
of his decision. Rather, Judge Lanzillo gave credence to "[t]he Arbitrator's ultimate assessment
… that the Grievant's conduct, while offensive and inappropriate, did not constitute sexual
harassment warranting dismissal and that a suspension identical to the suspension imposed upon
the female co-worker was the appropriate discipline for the Grievant under the CBA," before
finding that, "[a]s clarified, this conclusion does not violate the public policy against sexual
harassment in the workplace." (ECF No. 61, at p. 8). Consequently, Plaintiff's argument in this
regard is unavailing.

**E.     Failure to Find the Award Violated Public Policy Against Sexual Harassment**

Plaintiff contends that the Chief Magistrate Judge erred in finding that the Arbitrator's
Award did not conflict with the dominant and well-defined public policy against sexual
harassment in the workplace and should have recommended that the Award be vacated. This
contention is based upon Plaintiff's application of Stroehmann Bakeries, Inc. v. Local 7756, Int'l
Brotherhood of Teamsters, 969 F.2d 1436 (3d Cir. 1992), in which the Third Circuit held that
"an award which fully reinstates an employee accused of sexual harassment without a
determination that the harassment did not occur violates public policy." 969 F.2d at 1442.
However, in Stroehmann, the Court noted that "the arbitrator expressly refused to find whether
the alleged sexual harassment occurred," and instead found that the employer "had insufficiently
investigated the alleged incident before discharging [the plaintiff]." Such is not the case here and,
thus, Stroehmann is inapposite.

7

**F.**     **Arbitrator's Delay in Providing Clarification**

Finally, Plaintiff asserts that the Chief Magistrate Judge erred in failing to vacate the Award because of the Arbitrator's two-year delay in issuing a clarification. Plaintiff makes this assertion based on 29 C.F.R. § 1404.14, which provides that an arbitrator "must make awards no later than 60 days from the date of the closing of the record…." (ECF No. 63, at p. 19). However, as Defendant notes in its opposition brief, 29 C.F.R. § 1404.14 applies to the issuance of arbitration awards, not responses to remand orders, and there is nothing in the regulation indicating that failure to comply with its deadline invalidates the arbitration decision. (ECF No. 64, at p. 8). Thus, there is no sound legal basis for Plaintiff's argument in this regard.

After *de novo* review of the documents in this case, together with the report and recommendation and objections thereto, the following order is entered:

AND NOW, this 23rd day of September 2024;

IT IS HEREBY ORDERED that Defendant's cross motion for summary judgment [ECF No. 56] be GRANTED and that Plaintiff's renewed motion for summary judgment [ECF No. 51] be DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Oral Argument [ECF No. 65] is DISMISSED as moot.

AND, IT IS FURTHER ORDERED that the report and recommendation of Chief Magistrate Judge Lanzillo, issued April 16, 2024 [ECF No. 61], is adopted as the opinion of the Court.

The Clerk is directed to mark this case CLOSED.

8

SUSAN PARADISE BAXTER
United States District Judge

cc:      The Honorable Richard A. Lanzillo
         Chief United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WELCH FOODS, INC.,** | ) | **C.A. No. 19-322 Erie** |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **District Judge Susan Paradise Baxter** |
| | ) | **Chief Magistrate Judge Richard A. Lanzillo** |
| **GENERAL TEAMSTERS, LOCAL** | ) | |
| **UNION NO. 397,** | ) | |
| **Defendant.** | ) | |

### JUDGMENT ORDER

AND NOW, this 23rd day of September, 2024, pursuant to Rule 58 of the Federal Rules

of Civil Procedure and, in accordance with the Memorandum Order entered on this date,

JUDGMENT is hereby entered in favor of the Defendant General Teamsters Union 397,

and against Plaintiff Welch Foods, Inc.

_____
SUSAN PARADISE BAXTER
United States District Court

JA 22