# United States Court of Appeals

## *for the*

# Third Circuit

Case No. 24-2889

WELCH FOODS INC, WELCHS, a cooperative doing business as Welch's,

*Defendant-Appellee,*

– v. –

GENERAL TEAMSTERS, LOCAL UNION NO. 397

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

## BRIEF FOR DEFENDANT-APPELLEE

ERNEST B. ORSATTI, ESQ.
QUATRINI LAW GROUP
*Attorney for General Teamsters*
  *Local Union No. 397*
941 Penn Avenue, Suite 101
Pittsburgh, Pennsylvania 15222
(412) 391-2800
ebo@qrlegal.com

# DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 28(a)(1) of the Federal Rules of Appellate Procedure, Appellee General Teamsters Local 397 states:

General Teamsters Local 397 hereby certifies that no parent companies, subsidiaries, and/or affiliates have issued shares or debt securities to the public.

Certified by Ernest B. Orsatti on January 28, 2025.

*/s/ Ernest B. Orsatti*

Ernest B. Orsatti
PA Bar #19891
Quatrini Law Group
941 Penn Ave, STE 101
Pittsburgh, PA 15222
Cell: 412-523-9893  Fax: 724-837-1348
ebo@qrlegal.com
Counsel for Appellee

i

# TABLE OF CONTENTS

Disclosure Statements………………………………………………..i

Table of Authorities………………………………………….…..iii

Jurisdictional Statements…………………………………………1

Statement of the Issues Presented for Review………………………2

Statements of Related Cases and Proceedings………………………3

Statement of the Standard or Scope of Review………………………4

Statement of the Case……………………………………………5

Summary of the Argument…………………………………....…7

Argument………………………………………………….9

Conclusion……………………………………………....28

Certificate of Service………………………………………30

Certificate of Compliance…………………………………31

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*United Steelworkers v. Enterprise Wheel and Car Corp.,*

   *363 U.S. 593, 597 (1960)* …………………………………………..8

*Exxon Shipping Co. v. Exxon Seaman's Union,*

   *73 F.3d 1287, 1291 (3d Cir. 1996)* …………………………..9

*W.R. Grace & Co.,*

   *461 U.S. at 766)*…………………………………………………..9

*Verizon Pa., LLC v. Communications Workers of America,*

   *13 F.4th 300, 306 (3d Cir. 2021)*………………………………..*9*

*Eastern Associated Coal Corp. v. United Mine Workers of America,*

   531 U.S. 57 (2000)……………………………………………….9

*Stroehmann Bakeries Inc. v. Local 776, International Brotherhood of*

*Teamsters,*

   *969 F.2d 1436 (*3rd Cir. 1992)……………………………….13, 22, 23

*NF&M Corp. v. United Steelworkers,*

   524 F.2d 756 (3d Cir. 1975)……………………………….17

*United Paperworkers Int'l Union v. Misco,*

   484 U.S. 29 (1987)………………………………………….20, 21

# JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of the United States District Court for the Western District of Pennsylvania in Case No. 1:19-CV-00322-SPB-RAL on September 23, 2024. The District Court had jurisdiction pursuant to *Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 et seq.*

This Court has jurisdiction pursuant to *28 U.S.C. § 1291* because Welch Foods Inc. appeals from a final decision of the District Court. Venue is appropriate because the appeal is from a District Court in this Circuit.

# COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred as a matter of law in refusing to vacate an arbitration award on the grounds that it violated a dominant and well-established public policy against sexual harassment in the workplace when the arbitrator expressly found that the employee did not do so.

2. Whether the District Court erred in refusing to vacate the arbitration award.

3. Whether the District Court erred by advancing a theory for upholding the award that the arbitrator never relied upon.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Pursuant to Local Appellate Rule 28.1, General Teamsters Local 397 agrees with Welch Foods Inc. that this case has not been before this Court previously and that it is not aware of any other case or proceeding that is in any way related, completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

As to each of the issues presented for review, this court's review is plenary.

## STATEMENT OF THE CASE

Welch Foods Inc (hereinafter "Welch's") filed a motion to vacate the arbitration award (the "Award") entered on October 5, 2019, by Arbitrator Michelle Miller-Kotula ("Arbitrator"). The Award reinstated employee Pat Woodward (hereinafter "Woodward") with a 10-day suspension following a hearing. Woodward had been discharged by Welch's on January 11, 2019 (JA 199) for allegedly violating the well-established public policy against sexual harassment in the workplace (JA 201). Woodward was terminated for allegedly creating a "hostile work environment" through the use of "abusive, sexually explicit, and derogatory" language toward a fellow coworker and women in general (JA 42-64).

Woodward was a member of Appellee, General Teamsters Local 397 (hereinafter "Local 397" or "Union"), and had served as Chief Steward for two years (JA 43, 52.) Following his termination, Woodward filed a grievance protesting his discharge (JA 43-44.) The grievance was processed through the various step contractual grievance procedure outlined in the collective bargaining agreement (JA 43-45.) Ultimately,

the grievance was submitted to Arbitrator Michelle Miller-Kotula mutually selected by the parties under the Collective Bargaining Agreement (JA 45-46.) Her resume is included in the joint appendix (JA 195.)

A hearing was held on April 26, 2019, in Erie, Pennsylvania (JA 46.) No transcript of the hearing exists. The Arbitrator issued her Award on October 5, 2019 (JA 42-46.)

In its Statement of the Case, Welch Foods cherry-picked the Arbitration Award to create a false impression directly contrary to the Arbitrator's factual findings and conclusions of law. Instead of restricting its description to undisputed material facts, Welch's improperly included arguments under the guise of its "Statement of the Case."
Local 397 reserves its responses for the Argument section of this Brief.

Article XII, Section 6 of the collective bargaining agreement (JA 84) provides that the Arbitrator had the authority to "direct reinstatement or no reinstatement with or without back pay in whole or in part".

## SUMMARY OF ARGUMENT

Welch's continues to argue facts contrary to the findings made by the Arbitrator, who was mutually selected by the parties pursuant to the collective bargaining agreement and empowered to render a final and binding arbitration award. Welch's did not allege that the arbitration award fails to draw its essence from the collective bargaining agreement but only that the arbitration award violates public policy. However, Welch's argument is fatally flawed because the Arbitrator expressly found that Woodward is not guilty of sexual harassment, which is the basis of their public policy argument. The court does not have the authority to substitute its judgment for that of the Arbitrator and to reject the Arbitrator's factual findings based upon the plethora of Supreme Court precedent and the complete lack of evidence to override the Arbitrator's factual findings. Welch's continued insistence that Woodward is guilty of sexual harassment, in the face of the Arbitrator's express findings, does not make it so. Welch's had a full and fair opportunity to convince the Arbitrator that there was just cause for Woodward's discharge and failed to do so. Filing a lawsuit in

7

federal court is not part of the contractual grievance procedure. The parties bargained for arbitration as the final method to resolve contractual disputes. Welch's has grossly failed to prove that the arbitration award issued by Michelle Miller-Kotula violated any well-established and dominant public policy.

The District Court correctly applied the extremely narrow scope of the judicial review and confirmed the award reinstating Woodward.

Because this case involves the review of a labor arbitration award, the only material facts relevant are those set forth in the arbitration award and the Arbitrator's clarification of the award issued pursuant to the order of the District Court (JA-123-127). The United States Supreme Court has repeatedly stated that courts are not permitted to review the Arbitrator's legal or factual findings and are bound by those findings so long as they draw their essence from the collective bargaining agreement. *United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960).*

In order to vacate an arbitrator's award based upon a violation of public policy, a court must first determine that the public policy is "well

defined" and "dominant," and second, must find that the award is contrary to that public policy. *Exxon Shipping Co. v. Exxon Seaman's Union, 73 F.3d 1287, 1291 (3d Cir. 1996) (quoting W.R. Grace & Co., 461 U.S. at 766)*. This court's review of a district court's decision to vacate or confirm an arbitration award is plenary. *Verizon Pa., LLC v. Communications Workers of America, 13 F.4th 300, 306 (3d Cir. 2021)*.

## ARGUMENT

**I.** <u>THE ARBITRATOR'S AWARD IS NOT CONTRARY TO A "WELL DEFINED AND DOMINANT PUBLIC POLIY".</u>

Local 397 does not dispute the well-established principle that a court may vacate an arbitration award if it violates a "well-defined and dominant public policy" as determined by reference to laws and legal precedents and not by general considerations of supposed public policy interests. *Exxon Shipping Co., supra*; see also *Eastern Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57 (2000).

If Welch's current legal counsel had been present at the arbitration hearing, he would have heard the undersigned counsel explain to the Arbitrator that if Local 397 believed Woodward was

guilty of workplace sexual harassment, the Union would not have processed the grievance through arbitration. In fact, Local 397 opposes workplace sexual harassment even more strongly than Welch's

does. The Union successfully proved to the Arbitrator's satisfaction that Woodward did not engage in sexual harassment, and the Arbitrator made a clear finding to that effect.

As the Arbitrator found, Woodward admittedly used foul language in defending himself against accusations by Terri Lawson that he failed to properly represent female employees. However, both employees used offensive language, and the Arbitrator concluded that they both deserved a 10-day suspension as a result of using such language.

Nevertheless, Welch's counsel, who was not present at the arbitration hearing, is now asking the court to adopt his version of the facts rather than deferring to the arbitrator's findings. The Supreme Court has expressly directed courts to refrain from doing so. Contrary to Welch's assertion, the Arbitrator directly responded to the court's request for clarification and explicitly stated:

"The arbitrator did not find that the grievant engaged in sexual harassment, and the company did not contend in his termination letter that he was involved in sexual harassment."

This directly addresses the court's inquiry and the issue at hand. The Arbitrator's conclusion is correct—the termination letter does *not* accuse Woodward of sexual harassment. Instead, it charges him with:

"Creating a hostile work environment" and "threatening and intimidating behavior." (*Arbitration Award, p. 1, JA 43*)

There is nothing in the discharge letter that explicitly charges him with "sexual harassment."

At page three of her award, the Arbitrator further clarifies:

"He [Woodward] admits to using some of the curse words he was accused of, however, not in the context Terri and Rob are claiming. For example, he said the word 'vagina', but only to ask Terri: 'Why are you telling people I won't help them if they have a vagina?'" (*JA 49*)

As noted by the Arbitrator in her award, Local 397 did not argue that Woodward's alleged behavior was acceptable. Rather, the Union contended that Welch's failed to prove just cause for discharge and failed to substantiate its version of events. The Arbitrator found Woodward's testimony credible, and her factual findings warrant judicial deference not the factual theory of Welch's counsel, who was not present at the arbitration hearing.

11

The Arbitrator had the difficult task of determining the credibility of the witnesses. The court may question why the witnesses would lie during the arbitration hearing to cause a fellow employee's termination. As the arbitrator pointed out, once an employee provides a statement to the employer during an investigatory interview, that statement becomes locked in stone. Providing false information to the employer can result in termination. Therefore, employees are unlikely to change their statements later, even during arbitration, as doing so could jeopardize their jobs. Additionally, an arbitrator is better positioned to assess witness credibility in a hearing than a court reviewing an arbitration award. This principle aligns with the United States Supreme Court's long-standing policy, established in 1960, of deferring to arbitrators in such matters.

1. <u>There is a well-defined public policy prohibiting sexual harassment in the workplace and the Arbitrator found Woodward did not violate it.</u>

Welch's extensively argued that public policy strongly prohibits workplace sexual harassment, an assertion with which Local 397 fully agrees. Local 397 maintained that if it had believed Woodward was guilty of such misconduct, the case would never have proceeded to

arbitration. Welch's emphasized this point in its brief to the court.
However, despite overwhelming evidence to the contrary, Welch's
continues to argue that Woodward was accused of "sexual harassment",
citing the language in the discharge letter. The Arbitrator, in both her
initial arbitration award and subsequent clarification, explicitly stated
that Woodward was not accused of "sexual harassment". The court is
bound by this factual finding. This finding renders the case of
*Stroehmann Bakeries Inc. v. Local 776, International Brotherhood of
Teamsters, 969 F.2d 1436 (*3rd Cir. 1992) inapposite. In that case, an
arbitrator refused to address a charge of sexual harassment in the
workplace and instead reinstated the grievant on technical grounds.
This was found to be a violation of public policy. In the instant case, the
arbitrator expressly addressed the issue on remand.

The Arbitrator in the instant case was ordered to clarify two
issues on remand:

> "1) The arbitrator's specification of her factual findings regarding
> the sexual harassment allegations against the grievant.
>
> 2) If the arbitrator found merit to those allegations, her
> consideration of the pertinent public policy against sexual
> harassment in the workplace." (JA 126)

The Arbitrator addressed these issues and expressly found:

"This arbitrator has reviewed the award issued on October 5, 2019.

The Company terminated the grievant on January 21, 2019. According to the grievants termination letter, he was terminated for the following reasons:

- Creating a hostile work environment.

- Threatening behavior and language in the break room on January 11, 2019, in violation of Welch's conduct policies.

- Specifically, the violations included:

  o Disrespectful language that was abusive, sexually explicit, and derogatory towards another coworker and women in general.

  o Behavior that violated standards of common sense, common dignity, and demonstrated reckless disregard for fellow employees and the company." (JA 126)

The Arbitrator further clarified on page 1-2:


"This arbitrator did not find sexual harassment to be one of the charges the company outlined against the grievant. It was not included in the discharge letter provided to the grievant. The arbitrator based their findings on the reasons the company terminated the grievant, which did not include a charge of sexual harassment.

It was determined that both the grievant and Ms. Lawson engaged in inappropriate language in the workplace, with Ms. Lawson being the instigator of the incident. Although the company initially terminated both the grievant and Ms. Lawson, it later reduced her termination to a 10-day suspension.

The arbitrator found just cause to discipline the grievant for his actions, as he was involved in a verbal confrontation with Ms. Lawson regarding a union matter. Both employees used inappropriate language, which led to their termination. While the grievant raised his voice and used inappropriate words during the argument, his actions

mirrored those of Ms. Lawson, who also raised her voice and used inappropriate language.

The grievant did not instigate the argument but received a harsher punishment. Ultimately, the arbitrator reduced the grievants discipline from termination to a suspension, aligning it with the level of discipline Ms. Lawson received.

The arbitrator did not find that the grievant engaged in sexual harassment, nor did the company claim in the termination letter that he was involved in sexual harassment." (JA 199-200)

This clarification underscores that the termination was based on a broader issue of inappropriate workplace behavior rather than a formal charge of sexual harassment.

With respect to the courts second question on remand. The Arbitrator found:

"Because this arbitrator did not find that sexual harassment occurred during the incident of the workplace, the 'pertinent public policy' argument was not applicable to the Arbitration Award and, therefore, was not addressed." *Id.*

Welch's relies on cases where arbitrators found that the grievant actually engaged in sexual harassment in the workplace yet reinstated the employee. However, that is not what happened in this case. Arbitrator Michelle Miller-Kotula heard conflicting testimony and expressly determined that both employees engaged in the same conduct

and should have received the same punishment, namely, a 10-day suspension.

Welch's argues that the Arbitrator should have explicitly included the foul language used in the break room to explain her decision. However, the court never ordered her to do so.  The arbitrator clearly stated that Woodward did not engage in sexual harassment, nor did Lawson. Instead, Lawson wrongfully accused Woodward of failing to represent female employees, leading to an argument in which both employees used foul language. The arbitrator's decision does not require repeating the specific words used in the argument to resolve the legal issues in this case.

Welch's bizarre fixation on the use of foul language in resolving this issue is curious. The finder of fact determined that both employees engaged in the same conduct and deserved the same punishment. As a matter of law, this arbitration decision does not violate any well-defined public policy.

## II.  THE COURT MUST DEFER TO THE ARBITRATOR'S CLARIFICATION OF THE AWARD.

Counsel for Welch's insists that the Arbitrator must specify exactly what words were used in the break room in order to properly respond to the court's remand order. The District Court did not require the arbitrator to do so.  Furthermore, there is no case law to support Welch's argument in this regard.  It is respectfully submitted that the Arbitrator's clarification was more than sufficient to justify her decision that there was no just cause for Woodward's discharge.   She repeatedly stated that Woodward did not engage in sexual harassment, which fully resolves the issue submitted to her by the parties and ends the question posed to her by the court.

The United States Supreme Court has held that arbitrators are not required to list their reasons for an award. In *NF&M Corp. v. United Steelworkers*, 524 F.2d 756 (3d Cir. 1975), the court stated at 759:

"An arbitrator is not required to list his reasons for an award, nor should an ambiguity in his opinion be seized upon to support an inference that he exceeded his authority. *Enterprise*, *supra*. Further, a court is precluded from overturning an award for errors in assessing the credibility of witnesses, the weight accorded to their testimony, or in the determination of factual issues."

Welch's continues to argue that Woodward was guilty of sexual harassment but failed to prove their case before the Arbitrator, the designated authority for final and binding decisions. According to the collective bargaining agreement, disputes were to be resolved through a mutually selected labor arbitrator for final and binding resolution.

Welch's claims that the Arbitrator mischaracterized the case, arguing that her clarification of the award was flawed. However, this assertion is incorrect. The arbitrator explicitly stated that Woodward was <u>not</u> guilty of sexual harassment, <u>and</u> he was not charged with sexual harassment in the termination letter. These were two separate and distinct findings.

Welch's incorrectly suggests that the Arbitrator's decision was based on a technicality—i.e., that Woodward was not found guilty only because the termination letter did not explicitly charge him with sexual harassment. This is patently false. The Arbitrator did not make her decision based on the absence of this charge in the termination letter. Her exact words are:

"The arbitrator did not find the grievant engaged in sexual harassment, and the company did not contend in the discharge letter that he was involved in sexual harassment." (JA 199-200).

This statement is factually accurate, based on the evidence in the record.

The Arbitrator made it clear how she came to that conclusion. While the termination letter used the phrase "hostile work environment," this term does not necessarily equate to "sexual harassment." Hostile work environments can also be based on racial discrimination or other forms of misconduct. The arbitrator correctly noted that Woodward was not expressly charged with the offence if sexual harassment because the termination letter did not state so.

Although creating a hostile work environment can include sexual harassment, it is a much broader concept. More importantly, the arbitrator did not base her conclusion on the absence of the charge in the termination letter. She clearly stated that Woodward did not engage in sexual harassment based on her review of the evidence.

Despite this ruling, Welch's continues to argue that Woodward is guilty of sexual harassment and cites cases suggesting that reinstating such employees violates public policy. Welch's overlooks cases that

emphasize that courts must focus on the Arbitration Award itself not the alleged misconduct when determining whether reinstatement violates public policy.

Welch's continues to ignore the Arbitrator's final and binding determination that Woodward did not engage in sexual harassment. It insists that it sustained its burden of proof, even though the Arbitrator expressly found that it did not. Welch's then makes the fallacious argument that, because Woodward is guilty of sexual harassment, the arbitration award violates public policy.

If the Arbitrator had found that Woodward engaged in sexual harassment but still decided to reinstate him with a 10-day suspension, then Welch's would be correct. However, the arbitrator expressly found that Woodward did **not** engage in sexual harassment, and the court is bound by that finding. *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29 (1987).

In *Misco*, the Fifth Circuit vacated an arbitration award that reinstated an employee suspected of drug use based on public policy

concerns. The U.S. Supreme Court reversed that decision. Writing for

the majority, Justice White stated at 36-37:

"The function of the Court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which, on its face, is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances, the moving party should not be deprived of the arbitrator's judgment when it was his judgment and all that it connotes that was bargained for."

The Court further emphasized:

"Courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether a specific provision in the written instrument supports the claim." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567-568 (1960), footnote omitted. See also *AT&T Technologies, Inc. v. Communication Workers*, 475 U.S. 643, 649-650 (1986).

At 37-38, the Court continued:

"Because the Parties have contracted to have disputes settled by an arbitrator chosen by them, rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept. Courts, therefore, are not to hear claims of factual or legal error by an arbitrator as an appellate court does when reviewing decisions of lower courts. To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts, and a court may not reject those facts simply because it disagrees with them."

Welch's disagrees with the Arbitrator's conclusion that Woodward

did not engage in sexual harassment. Woodward admittedly used foul

language while defending himself against false accusations that he failed to properly represent female employees as Chief Union Steward. However, the Arbitrator made it clear in her award that, although such language was used, it was not in the context alleged by Welch's. The Arbitrator accepted Local 397's defense that Woodward used these words solely to defend himself, not to sexually harass anyone.

Welch's continued reliance on *Stroehmann, supra*, is misplaced. In *Stroehmann*, an employee was discharged for alleged sexual harassment. The arbitrator found that the employer had not given the employee an opportunity to refute the charges or explain his conduct. The arbitrator reinstated the employee with full back pay, <u>without deciding whether the grievant was guilty of sexual harassment.</u> The District Court remanded the case for new arbitration before a different arbitrator to determine the merit of the charge. The Third Circuit affirmed, noting at 1440:

"The arbitrator expressly refused to find whether the alleged sexual harassment occurred. Instead, he found that Stroehmann had insufficiently investigated the alleged incident before discharging Leonard. Based solely on this finding, he determined that Leonard was not discharged for just cause and ordered his reinstatement with full back pay, less interim earnings….The District Court vacated the award after concluding that a well-established public policy exists against

sexual harassment in the workplace and that the arbitrator's award violated that public policy by ordering reinstatement without a factual finding on the merits of the allegations against Leonard."

In *Stroehmann*, the arbitrator reinstated an employee accused of sexual harassment while expressly declining to rule on <u>whether the employee was guilty of sexual harassment.</u> That is not the case here. In this case, the Arbitrator expressly found that the grievant was not guilty of sexual harassment.

## III: <u>THE ARBITRATOR DID, IN FACT, CLARIFY HER AWARD.</u>

Welch's argues in the "Statement of the Case" section of its Brief that the Arbitrator did not clarify her award and, in Argument II.B, claims that the Arbitrator refused to comply with the remand order. Welch's contends on page 19 of its Brief that although the order required the Arbitrator to specify her factual findings regarding sexual harassment, she did not do so, refusing to specify the foul and inappropriate words used by Woodward (*Welch's Brief*, p. 19).

First, the court did not order the Arbitrator to specify the foul words used by Woodward. The court remanded the case to the arbitrator to determine whether Woodward was guilty of sexual harassment, and the Arbitrator specifically addressed that question.

The court specifically ordered the arbitrator to address the following two questions:

"1) The arbitrator's specification of factual findings regarding the sexual harassment allegations against the grievant, and

2) If the arbitrator found merit to those allegations, her consideration of the *'pertinent public policy'* against sexual harassment in the workplace." (JA 126).

Welch's continuously and persistently argues that the court ordered the arbitrator to specifically state the exact words used. However, that is not what the court ordered. The court instructed the Arbitrator to specify her factual findings regarding the sexual harassment allegations. That is precisely what the arbitrator did in her clarification of the award.

The Arbitrator stated several times that Woodward was <u>not guilty</u> of sexual harassment. She clearly stated, "the arbitrator did not find the grievant engaged in sexual harassment, and the Company did not contend in his termination letter that he was involved in sexual harassment." (JA 200).

Furthermore, she explained:
"Because this arbitrator did not find that sexual harassment occurred during the incident in the workplace, the 'pertinent public policy' argument was not applicable to this arbitration award and, therefore, was not addressed." *Id.*

The Arbitrator spent two pages explaining her factual findings clearly and thoroughly, without resorting to crude language. It was not necessary for her to describe the exact words used during the incident to specify her factual findings regarding the sexual harassment allegations.

Welch's simply disagrees with the Arbitrator's decision, but it is disingenuous to argue that she failed to answer the court's question. The District Court was rightly satisfied that the Arbitrator had resolved the issue. In fact, the District Court characterized Welch's argument in this regard as *"borderline disingenuous." (JA 18).*

The court held:

"The arbitrator expressly states that 'she did not find the grievant engaged in sexual harassment, **and** the company did not contend in his termination letter that he was involved in sexual harassment.'

This conclusion is clearly stated in the conjunctive. The arbitrator then reiterated the first reason in the subsequent paragraph, quoted in part by Judge Lanzillo,

'Because this arbitrator did not find sexual harassment occurred during this incident in the workplace...' *Id.*

These two statements by the arbitrator fully support the Chief Judge Magistrate's conclusion that the arbitrator did not find that sexual harassment occurred. The plaintiff's objection in this regard is unfounded." (JA 18).

Welch's continuously argues that the arbitrator failed to respond to the remand order when she clearly did. Despite decades of case law establishing that arbitrators are not required to explain the reasons for their decisions, Welch's continues to argue that the arbitration award violates public policy, even though the Arbitrator clearly stated that Woodward did not engage in sexual harassment. Welch's is dissatisfied with the arbitrator's decision and is asking the court to ignore the extremely narrow scope of judicial review. Welch's is blatantly asking the court to substitute Welch's narrative of what occurred for that of the arbitrator.

Welch's had an opportunity to persuade the arbitrator that Woodward engaged in sexual harassment at the arbitration hearing and failed to do so. The arbitrator made it extremely clear that she found Woodward was <u>not guilty of sexual harassment</u>. Despite Welch's belief that he was guilty, there is no legal basis to overturn the

arbitrator's final and binding award without disregarding decades of precedent, dating back to 1960.

## IV: <u>THE ARBITRATOR'S DELAY IN PROVIDING CLARIFICATION.</u>

In footnote 9 of Welch's brief, they argue that the Arbitrator's two-year delay in responding to the remand should be considered by the court as a basis for not enforcing the award.

It is respectfully submitted that their reliance on 29 C.F.R. § 1404.14 is misplaced, as noted by the District Court. This regulation applies to arbitration awards, not to remand orders. Furthermore, nothing in the regulation indicates that failure to comply with it invalidates an arbitration decision.

Welch's argument is akin to a boy convicted of murdering his parents asking the sentencing judge for leniency because he is an orphan. Welch's could have easily reinstated Woodward while challenging the validity of the award to avoid undue hardship. Instead, they made a conscious decision to deny reinstatement during the litigation.

As noted by the District Court, this federal regulation "applies to the issuance of arbitration awards, not responses to remand orders," and "there is nothing in the regulation indicating that the failure to comply with this deadline invalidates the arbitration decisions." (JA 20). The court further found, "Thus, there is no sound legal basis for plaintiffs' argument in this regard." *Id.*

## CONCLUSION

Upon the basis of the foregoing facts, arguments, and authorities, Local 397 respectfully requests that the court affirm the decision of the District Court, confirm the Arbitration award of Michelle Miller-Kotula, and grant such other relief as the court may deem just and proper.

Respectfully submitted,

Quatrini Law Group

By: */s/ Ernest B. Orsatti*

Ernest B. Orsatti
PA Bar #19891
Quatrini Law Group
941 Penn Ave, Suite 101
Pittsburgh, PA 15222
Cell: 412-523-9893

Fax: 724-837-1348

ebo@qrlegal.com

Counsel for Appellee, General Teamsters Local 397

## CERTIFICATE OF SERVICE

I hereby certify that on <u>February 6, 2025</u>, a true and correct copy of the foregoing document, the foregoing Brief for Appellee, was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. Paper copies will be sent via overnight mail, postage prepaid, to the following counsel of record for the appellant:

| | |
|---|---|
| Robert A. Fisher | John Ayers-Mann |
| Massachusetts Bar No. 643697 | Massachusetts Bar No. 703184 |
| SEYFARTH SHAW LLP | SEYFARTH SHAW LLP |
| Two Seaport Lane, | 2029 Century Park East, |
| Suite 1200 | Suite 3500 |
| Boston, Massachusetts 02210 | Los Angeles, CA 90067-3021 |

# CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements, and Type-Style Requirements Pursuant to Local Appellate Rule 31.1(c)

I am counsel for Appellee, General Teamsters Local 397. I certify that:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because:

   This brief contains 5,132 words, excluding the parts of the brief excluded by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using Microsoft Word in plan, 14-point Century Schoolbook typeface. Footnotes appear in plain, 14-point Century Schoolbook typeface.

3. Pursuant to Local Appellate Rule 31.1(c), the electronic brief is

identical to the text in the paper copies.

Pursuant to Local Appellate Rule 31.1(3), a virus detection program

Windows Defender was run on the file, and no virus was detected.

/s/ *Ernest B. Orsatti*

Ernest B. Orsatti                                    Dated: <u>February 6, 2025</u>
PA Bar #19891
Quatrini Law Group
941 Penn Ave, Suite 101
Pittsburgh, PA 15222
Cell: 412-523-9893  Fax:
724-837-1348
ebo@qrlegal.com
Counsel for Appellee

# CERTIFICATION OF BAR MEMBERSHIP

With Local Appellate Rule 28.3(D)

General Teamsters Local 397 certifies that the attorney whose name

appears on the brief is a member of the bar of this Court pursuant to

Local Appellate Rule 46.1.


*/s/ Ernest B. Orsatti*

Ernest B. Orsatti                                    Dated: <u>February 6th, 2025</u>
PA Bar #19891
Quatrini Law Group
941 Penn Ave, Suite 101
Pittsburgh, PA 15222
Cell: 412-523-9893  Fax:
724-837-1348
ebo@qrlegal.com
Counsel for Appellee