No. 24-2889

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

**WELCH FOODS, INC.**,

*Appellant*,

v.

**GENERAL TEAMSTERS LOCAL 397**,

*Appellee.*

---

Appeal from a Final Judgment of the United States District Court for the Western District of Pennsylvania, Case No. 1:19-CV-00322-SPB-RAL (September 23, 2024)

---

**REPLY BRIEF OF APPELLANT**

---

Robert A. Fisher
Massachusetts Bar No. 643697
SEYFARTH SHAW LLP
Two Seaport Lane,
Suite 1200
Boston, Massachusetts 02210
617-946-4800 (Telephone)
617-946-4801 (Facsimile)
rfisher@seyfarth.com

John T. Ayers-Mann
Massachusetts Bar No. 703184
SEYFARTH SHAW LLP
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
(310) 277-7200 (Telephone)
(310) 201-5219 (Facsimile)
jayers-mann@seyfarth.com

COUNSEL FOR APPELLANT

## Table of Contents

Page

ARGUMENT ........................................................................................ 1

I. The Union Relies On Made Up "Facts" ........................................ 1

II. The Union's Argument That the Arbitrator Was Not Required to Make Specific Factual Findings is Specious................ 4

III. The Arbitrator's Statement About Sexual Harassment Cannot Be a Substitute for Actual Factual Findings...................... 6

IV. Lawson and Woodward Did Not Engage in the Same Conduct.......................................................................................... 10

V. The Arbitrator Delayed This Case for Years ................................ 10

CONCLUSION .................................................................................... 11

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS AND WITH LOCAL APPELLATE RULE 31.1(C) ........................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Colonial Penn Ins. Co. v. Omaha Indem. Co.*,
943 F.2d 327 (3d Cir. 1991) .......... 8

*NF&M Corp. v. United Steelworkers of Am.*,
524 F.2d 756 (3d Cir. 1975) .......... 3

*Stroehmann Bakeries, Inc. v. Local 776, International Brotherhood of Teamsters*,
969 F.2d 1436 (3d Cir. 1992) .......... 7, 8, 9, 11

*Universal Minerals, Inc. v. C.A. Hughes & Co.*,
669 F.2d 98 (3d Cir. 1981) .......... 6

## Other Authorities

Local App. R. 28.3(c) .......... 2

## ARGUMENT

The arbitration award should be vacated. In its responsive brief, General Teamsters Local Union 397 (the "Union") would transform deference to the decision of an arbitrator into no review at all. The Arbitrator failed to make specific factual findings, as required by the District Court's remand order. In an attempt to justify the Arbitrator's recalcitrance, the Union makes up its own facts, disregards what the District Court ordered the Arbitrator to do and contends that the Arbitrator was free to frustrate court review of her award, as clarified.

### I. The Union Relies On Made Up "Facts"

In its description of the Statement of the Case, the Union accuses Welch Foods, Inc. ("Welch's") of making assertions which are contrary to the facts found by the Arbitrator. Brief of Appellee, p. 6. But nowhere in its brief does the Union identify even a single assertion in support of that contention.

Instead, its brief reveals that it is the Union that is playing fast and loose with the "facts." For example, it asserts that "the Arbitrator found" that Woodward simply used foul language to "defend[] himself against accusations by Terri Lawson that he failed to properly

represent female employees." Brief of Appellee, p. 10. The Union cites nothing in the record for this proposition, as there is none.[1] The Arbitrator made no such finding in her original Award or in the "clarification." *See* Joint Appendix ("JA") 165 (Award); JA 200 (Clarification).

The Union also claims that the Arbitrator "further clarifie[d]" in the original Award what she had found to have happened, citing a block quote purportedly from the Arbitrator. *See* Brief of Appellee, p. 11. But the quoted language is not some finding by the Arbitrator. It is from the written summary of the parties' fourth step grievance meeting. JA 45 (Award).[2] That written summary also stated that Woodward "referred to [Lawson] and female employees as Self-serving Vagina Bitches and fucking worthless . . . gestured at his groin and made a comment along the lines of 'if don't have one of these you are no good.'" *Id.* The written summary's recitation of Woodward's denials to those allegations is not and cannot be a finding by the Arbitrator.

---

[1] *But see* Third Cir. Local App. R. 28.3(c).

[2] The Union cites to the wrong page of the record in its brief. *See* Brief of Appellee, p. 11.

Nonetheless, the Union goes so far as to claim that "the Arbitrator found Woodward's testimony credible." Brief of Appellee, p. 11. But here again, the Union makes up facts. The Arbitrator made no such finding. JA 165 (Award); JA 200 (Clarification). The Union admitted as much at oral argument. When the Chief Magistrate Judge lamented that the Arbitrator had failed to make any credibility determinations in her clarification, counsel for the Union conceded that the Arbitrator "didn't make those findings." JA 240-241 (transcript).

In this respect, the Union's citation to *NF&M Corp. v. United Steelworkers of Am.*, 524 F.2d 756 (3d Cir. 1975), is puzzling. The Union correctly asserts that the decision stands for the proposition that courts cannot overturn an arbitrator's credibility assessments or the weight to accord witnesses' testimony. Had the Arbitrator actually made a credibility determination, Welch's could understand the Union's citation. But she never did, and she certainly never credited Woodward's story.[3]

---

[3] The Union doubles down on this fabricated credibility determination, commenting that the Arbitrator had a difficult task in assessing credibility and speculating why a witness might lie. *See* Brief of Appellee, p. 12. The Union falsely asserts that "the arbitrator pointed out" that a written witness statement "becomes locked in stone" and

Apparently to prop up its contention that the Arbitrator believed Woodward over other witnesses, the Union obsessively recites the fact that its counsel attended the underlying arbitration hearing, while Welch's current counsel did not. Brief of Appellee, pp. 9, 10. As it did before the District Court, the Union insists that it somehow has a better understanding of what the Arbitrator meant than Welch's or, for that matter, this Court. But whatever its counsel might have said back in 2019, there is not an iota of evidence in the record to suggest that the Arbitrator adopted any statement by counsel for the Union.

At bottom, by suggesting that the Arbitrator made findings that she did not, the Union tacitly acknowledges that the Arbitrator did not do what the District Court ordered her to do. The Arbitrator never made any credibility determination or factual findings as to what Woodward said or did during the incident in the breakroom.

## II. The Union's Argument That the Arbitrator Was Not Required to Make Specific Factual Findings is Specious

In an effort to paper over this hole in the Arbitrator's

---

therefore witnesses are unlikely to change their stories and risk losing their jobs. *Id.* While the Union's counsel certainly made this argument to the Arbitrator, *see* JA 57 (Award), the Arbitrator never adopted it. JA 59-63 (Award).

"clarification," the Union repeatedly asserts that the Arbitrator was not required to specify what Woodward said or did. Brief of Appellee, pp. 17, 23-24. This cannot be a serious argument, as it ignores what the District Court's order was about. The District Court initially denied the Union's motion to dismiss in 2020 because the Arbitrator "fail[ed] to address the specific conduct underlying [Welch's] decision to terminate" Woodward. JA 106 (Sept. 30, 2020 Memorandum Order). In 2021, the District Court denied the Union's cross-motion for summary judgment. It adopted the Chief Magistrate Judge's Report and Recommendation that the Arbitrator did not "address the specific conduct of which Woodward was accused." JA 119 (Jan. 25, 2021 Report & Recommendation); 125-126 (Aug. 12, 2021 Memorandum Order). Accordingly, the District Court thus ordered the Arbitrator to fill this gap by clarifying her Award to include "specification of her factual findings regarding the sexual harassment allegations." JA 126 (Aug. 12, 2021 Memorandum Order). The Union's insistence that the Arbitrator was not required to actually provide such specifications is a further acknowledgement that the Arbitrator disobeyed the remand order.

## III. The Arbitrator's Statement About Sexual Harassment Cannot Be a Substitute for Actual Factual Findings

The Arbitrator's statement in the "clarification" that she "did not find the grievant engaged in sexual harassment" cannot be a substitute for what the District Court instructed her to do. The Union conflates a legal conclusion with an actual finding of fact. "[F]acts are the historical and narrative events elicited from the evidence presented at trial." *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981). Put differently, facts are the who, what, where and how. Whether those facts establish "sexual harassment" is a legal conclusion. *Id*.

The District Court's remand order maintained that distinction. It asked the Arbitrator to specify what Woodward did and then assess that conduct in the context of the public policy against sexual harassment. The remand order thus did not permit the Arbitrator to refuse to say what she found Woodward to have said and did.

Even assuming that the Arbitrator's statement about sexual harassment is independent from her assessment of the termination letter, a proposition which Welch's disputes, it is for the Court, not the Arbitrator, to determine whether or not the Award (and the grievant's

reinstatement) conflicts with the public policy against sexual harassment. *See Stroehmann Bakeries, Inc. v. Local 776, International Brotherhood of Teamsters*, 969 F.2d 1436, 1444 (3d Cir. 1992) (explaining that the district court properly assessed whether the award violated public policy). In order to make that assessment, the Arbitrator was required to specify what she found to have occurred, precisely because the allegations against Woodward, if true, called into question whether the Award violated public policy. JA 125-26 (Aug. 12, 2021 Memorandum).

As the District Court recognized when it remanded the case, the Arbitrator's failure to make factual findings "frustrated" its ability to determine whether the Award violated public policy. JA 126 (Aug. 12, 2021 Memorandum). The Arbitrator's continued refusal to do so in response did not and could not alleviate this frustration, since the clarification offered no findings as to what Woodward did. In this context, the Arbitrator's bare statement about sexual harassment was a label without any factual moorings.

The Union's attempt to elevate that label to something more must be rejected. First, although this Court has permitted District Courts to

remand ambiguous awards, *see, Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991), it has never licensed an arbitrator to disregard such an instruction. Yet this is what the Arbitrator did here.

Second, if the Arbitrator's conduct were permitted, in the context of this case, it would effectively deprive the courts' determination as to whether the Award conflicts with public policy. In this respect, the Union misrepresents *Stroehmann Bakeries*. In that case, the arbitrator failed to make any credibility determinations and made no findings as to the specific allegations. 969 F.2d at 1443. Contrary to the Union's position, the case does not mean that the Arbitrator was free to ignore a court order requiring her to make specific findings as to the allegations against Woodward. Nor does it mean she could avoid court review simply by saying "no sexual harassment."

Third, the parties and the District Court can only guess as to what the Arbitrator actually meant. The Union theorizes that the Arbitrator must have concluded that Woodward did not commit the offenses for which he was accused. The Chief Magistrate Judge thought otherwise, *see* JA 239, and he theorized that the Arbitrator meant that the conduct

was not severe or pervasive and therefore did not rise to the level of sexual harassment. JA 10 (Apr. 16, 2024 Report & Recommendation). The District Court judge distanced herself from this theory, but struggled to explain how the Award, as supposedly "clarified," did not conflict with the established public policy against sexual harassment in the workplace. JA 19 (Sept. 23, 2025 Memorandum). And as set forth in its principal brief, Welch's submits that the Arbitrator's sentence about sexual harassment reflects only her misreading of the termination letter.[4]

Fundamentally, if Woodward committed the offenses of which he was accused, he cannot be reinstated. The Union conceded as much below and does not take a contrary position in its brief on appeal. Thus, the Arbitrator's phrase about sexual harassment cannot be used to gloss over what Woodward said or did. The District Court seemingly

[4] The Union implies that because the Arbitrator said that the termination letter did not accuse of Woodward of sexual harassment, it somehow prohibits an analysis under *Stroehmann* of whether the Award conflicts with the established and dominant public policy against sexual harassment in the workplace. Brief of Appellee, p. 13. But nothing in *Stroehmann* supports that conclusion. Indeed, the grievant in the underlying arbitration was not even charged with sexual harassment. Here, the Arbitrator is not a lawyer, and her statement about the letter demonstrates only her ignorance of what constitutes sexual harassment.

concluded that the conduct occurred and that should have led to the vacatur of the Award, not its confirmation. If it is unclear what the Arbitrator thought, then a remand is required.

## IV. Lawson and Woodward Did Not Engage in the Same Conduct

Because the Award as "clarified" remains ambiguous, the Union retreats to a claim that the Arbitrator simply found that Lawson and Woodward engaged in the "same conduct" and accordingly received the same punishment. According to the Union, they were in "an argument in which both employees used foul language." Brief of Appellee, p. 16. But the Arbitrator found only that Woodward "said inappropriate comments and foul language." JA 62 (Award). She refused to say what exactly he said, and nothing in her description of the evidence would allow for equating what Lawson said with Woodward's conduct. While the Union feigns confusion as to why this matters, *see* Brief of Appellee, p. 16, the Arbitrator's generic labeling of their conduct as "the same" does not and could not mean that the Award does not violate the public policy against sexual harassment in the workplace.

## V. The Arbitrator Delayed This Case for Years

For almost two years, the Arbitrator ignored the District Court's

remand order and even when pressed, refused to specify her factual findings. In defense of the Arbitrator's resistance, the Union offers up an analogy that is as bizarre as it is offensive. It argues that Welch's should have just reinstated Woodward, characterizing the company's position as "akin to a boy convicted of murdering his parents asking . . . for leniency because he is an orphan." Brief of Appellee, p. 27. The import of *Stroehmann Bakeries* and its progeny is that an employer ought not be compelled to return a sexual harasser to the workplace. And while the Union may think little of that concern, it is of paramount importance to Welch's and its obligations to its overall workforce.

The entire purpose of the remand order was to aid the District Court in determining whether the Arbitrator's reinstatement order is contrary to that dominant and well-established public policy against sexual harassment in the workplace. The Arbitrator's disregard of the remand demonstrates that her silence on what Woodward actually said and did was a deliberate effort to frustrate that determination.

## CONCLUSION

For these reasons and those set forth in its principal brief, Welch Foods, Inc. respectfully requests that Court reverse the judgment of the

District Court, grant summary judgment to it by vacating the Award, and grant such other and further relief as the Court deems just and appropriate.

Dated: February 27, 2025

Respectfully submitted,

SEYFARTH SHAW LLP

By: *_/s/ Robert A. Fisher_*

Robert A. Fisher
Massachusetts Bar No. 643797
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
Email: rfisher@seyfarth.com

John Ayers-Mann
Massachusetts Bar No. 703184
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
Email: jayers-mann@seyfarth.com

COUNSEL FOR APPELLANT
WELCH FOODS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of February, 2025, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via overnight mail, postage prepaid to the following counsel of record for the Appellee:

Ernest B. Orsatti
Quatrini Law Group
941 Penn Avenue
Pittsburgh, PA 15222
ebo@qrlegal.com

*s/Robert A. Fisher*
Robert A. Fisher
Counsel for Appellant
Welch Foods, Inc.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS AND WITH LOCAL APPELLATE RULE 31.1(C)**

I am counsel for Appellant Welch Foods, Inc. I certify that:

1. This reply brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because:

> This brief contains 2,262 words, excluding the parts of the brief excluded by Federal Rule of Appellate Procedure 32(f).

2. This reply brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

> This brief has been prepared in a proportionally spaced typeface using Microsoft Word in plan, 14-point Century Schoolbook typeface; footnotes appear in a plain, 14-point Century Schoolbook typeface.

3. Pursuant to Local Appellate Rule 31.1(c), the electronic reply brief is identical to the text in the paper copies.

4. Pursuant to Local Appellate Rule 31.1(c), a virus detection program, CrowdStrike Falcon, was run on the file and no virus was detected.

*s/ Robert A. Fisher*
Robert A. Fisher

Counsel for Appellant
Welch Foods, Inc.

Dated: February 27, 2025